Roger DePLANCHE, Plaintiff,

v.

Joseph A. CALIFANO, Secretary of Health, Education & Welfare, individually and in his official capacity as Secretary, Defendant.

No. K 77–371.

United States District Court, W.D. Michigan, S.D.

Oct. 4, 1982.

William Coash, Legal Aid Society of Calhoun County, Battle Creek, Mich., for plaintiff.

John A. Smietanka, U.S. Atty. by Donald Davis, Asst. U.S. Atty., Grand Rapids, Mich., for defendant.

## OPINION

ENSLEN, District Judge.

This matter is before the Court on cross Motions for Summary Judgment filed by both the Plaintiff and Defendant pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary Judgment is appropriate only where no genuine issue of material fact remains to be decided and the Plaintiff or Defendant is entitled to judgment as a matter of law. See *Willetts v. Ford Motor Company,* 583 F.2d 852, 855 (CA 6 1978); *Felix v. Young,* 536 F.2d 1126, 1130 (CA 6 1976); Federal Rules of Civil Procedure 56(c). A court may not resolve disputed questions of fact in a summary judgment decision; see *United States v. Articles of Device ... Diapulse,* 527 F.2d 1008, 1011 (CA 6 1976), and if a disputed question of fact remains, the court should deny the Motion for Summary Judgment and proceed to trial. See *Felix v. Young, supra,* at 1030; *Bohn Aluminum & Brass Corporation v. Storm King Corporation,* 303 F.2d 425, 427 (CA 6 1962). These guidelines will be

adhered to as the substantive issues of these motions are examined.

### Factual Background

On May 23, 1977 the Plaintiff requested from the Social Security Administration the address of his two minor children pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. At first blush, this request seems odd; however, the facts underscoring Plaintiff's interest reveal why this inquiry was made.

In a circuit court action in Ottawa County, Michigan, Plaintiff, who was not married to the children's mother, was named father and ordered to pay support pursuant to a November 2, 1973 Order of Filiation and Support. No visitation rights were entered according to that decree. At the time this order went into effect, Plaintiff was disabled and a recipient of social security disability benefits. 42 U.S.C. § 401 et seq. His children are, accordingly, entitled to social security benefits as dependents of a disabled wage earner. The children are minors and, therefore, receive these benefits through a representative payee. 42 U.S.C. § 405(k). These social security benefits have constituted the Plaintiff's child support payments since the entry of the Order of Filiation and Support. The May 23, 1977 request was initiated so that Plaintiff could visit his children.

This request was denied by the Social Security Administration in a letter dated June 2, 1977, wherein it was stated that releasing the address of the children would constitute: "a clearly unwarranted invasion of personal privacy", and referred the Plaintiff to an enclosed copy of sections of the Administrative Manual which dealt with the release of such information; SSA Administrative Rule § 7320.1(a) and (b). On June 9, 1977 a follow-up letter was forwarded to the Social Security Administration by the Plaintiff, reiterating his former request under FOIA and also, for the first time, citing the Privacy Act, specifically 5 U.S.C. § 552a(d)(1), (permitting an individual access to his record); 5 U.S.C. § 552a(h), (providing that the parent of a minor may act on behalf of the individual); and 5 U.S.C. § 552a(b)(8), (permitting disclosure without consent: "pursuant to a showing of compelling circumstances affecting the health or safety of an individual"), as grounds for the release of his children's address.

Without having received a reply, the Plaintiff on July 29, 1977 filed suit in this Court, seeking declaratory and injunctive relief. Subsequent thereto, on June 22, 1978 Plaintiff sought administrative review of the Social Security Administration decision denying his previous request for information. On August 9, 1978, the then-Acting Commissioner of Social Security, Don I. Wortman, denied Plaintiff's administrative appeal because: (1) under 5 U.S.C. § 552a(d)(1) the information requested did not "pertain" to the Plaintiff, and; (2) under 5 U.S.C. § 552a(h) it did not appear that the Plaintiff was requesting the information on behalf of his children. In addition, the Commissioner stated that personal information is not disclosed unless such disclosure would serve the public interest to a degree that outweighs the individual's right to privacy, and no such benefit would ensue in the present situation. The Commissioner stated that this policy is consistent with FOIA, which exempts from its requirements disclosure of information which would constitute a clearly unwarranted invasion of personal privacy, 5 U.S.C. § 552(b)(6).

A status conference on the pending district court litigation was held on January 21, 1980, at which time it was agreed that Plaintiff would file an affidavit setting forth the pertinent facts in support of his request for an injunction restraining Defendant from withholding information concerning the address of Plaintiff's two minor children. This affidavit was filed on January 31, 1980 and the government responded by filing, on March 10, 1980, a Motion for Summary Judgment. This filing was closely followed on April 14, 1980 by Plaintiff's submission of a Motion for Summary Judgment.

## Discussion

In support of the denial of Plaintiff's request for the address of his two minor children, the Defendant argues that denial was justified pursuant to 5 U.S.C. § 552(b)(6), which provides that disclosure under FOIA does not apply to: "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy". In opposition, the Plaintiff contends that his children's address does not come within the scope of Exemption 6, *supra,* since it does not share "similar privacy values" as disclosure of personnel or medical files, *Department of Air Force v. Rose,* 425 U.S. 352, 376, 96 S.Ct. 1592, 1606, 48 L.Ed.2d 11 (1976), and the address is not an "intimate detail" of a "highly personal" nature, but rather directs a "much lower degree of disclosure". *Getman v. NLRB,* 450 F.2d 670, 675 (C.A.D.C.1971).

■ FOIA, while providing for public access to information gathered by the government, specifically exempts certain material including, under 5 U.S.C. § 552(b)(6): "Personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy". The standard for granting summary judgment in favor of the agency's denial, applicable to the bulk of the nine exemptions listed in 5 U.S.C. § 552(b), differs from that required in Exemption 6 (and 7(C)). *Lesar v. United States Department of Justice,* 636 F.2d 472, 486 n. 80 (C.A.D.C.1980). In the bulk of the exemptions, the Court's primary role is to review the adequacy of the affidavits and other evidence presented by the government in support of its position, utilizing *in camera* examination as an aid in determining whether the government's affidavits are accurate and made in good faith. If the affidavits describe the content of the material withheld and adequately state the grounds for nondisclosure; and if those grounds are reasonable and consistent with applicable law, nondisclosure should be upheld. *Cox v. United States Department of Justice,* 576 F.2d 1302 (CA 8 1978). It is only necessary for the Court to determine whether the affidavits provide specific information to place the documents within an exemption category. If such information is not contradicted on the record, and if there is no evidence of agency bad faith, summary judgment is appropriate without an *in camera* review of the documents. *Holy Spirit Association for the Unification of World Christianity v. Central Intelligence Agency,* 636 F.2d 838, 845 (C.A.D.C.1980). Exemption 6 (and 7(C)) however, must be construed in a different manner than these other exemptions.

■ Here, the Court is called upon to balance the conflicting interests and values involved, whereas in other exemptions, Congress has struck the balance. Hence the task of the Court is limited to finding whether the material at issue is within a defined category enumerated in an exemption. *Lesar v. United States Department of Justice, supra,* at 486 n. 80.

■ In assessing whether a particular disclosure falls within Exemption 6, courts have traditionally employed a three prong test. In order for Exemption 6 to be applicable: (1) the information must constitute personnel, medical or similar files; (2) disclosure of the information must constitute an invasion of personal privacy, and; (3) the severity of the invasion of personal privacy must outweigh the public interest in disclosure. *Metropolitan Life Insurance Company v. Usery,* 426 F.Supp. 150, 166–167 (D.C.1976). The Sixth Circuit in *Madeira Nursing Center, Inc. v. NLRB,* 615 F.2d 728, 730 (CA 6 1980), construed Exemption 6 and upheld the NLRB's refusal to produce union authorization cards requested by an employer, and in doing so stated: "The central inquiry is whether public access to the information found in the authorization card is tantamount to an invasion of privacy; if so, we ask whether such invasion is justified by any countervailing public benefit from disclosure." 615 F.2d at 730.

■ Plaintiff's contention that the children's address does not fall within the scope

of Exemption 6's "similar files" requirement must fail for two reasons. First, Plaintiff's reliance on *Getman* is misplaced. While it is true that the court permitted the release of names and addresses in *Getman,* another circuit denied such disclosures in *Wine Hobby USA, Inc. v. IRS,* 502 F.2d 133 (CA 3 1974). *Getman* concerned labor law professors engaged in an NLRB voting study who needed names and addresses of union members to conduct the study. *Wine Hobby* involved a wine making equipment company that sought the names and addresses of people who had registered with the United States Bureau of Alcohol, Tobacco and Fire Arms to produce wine for family use. The purpose for requesting this information was to send catalogues and other announcements to these people regarding sales of wine making equipment. In *Getman* the court determined that the disclosure was warranted because the contact the professors would make with the individuals whose names and addresses were disclosed would be minimal and the public interest would be served by performance of their study. In *Wine Hobby* conversely, the court denied disclosure, finding that disclosure of the names and addresses of those who registered as amateur wine makers would be an invasion of personal privacy. The *Wine Hobby* court balanced this invasion against the public interest and found no direct or indirect public interest; hence, disclosure was not required. Notably, *in both cases,* the courts found that disclosure would be an invasion of privacy.

In the instant case, the disclosure of the Plaintiff's children's address is a greater invasion of privacy than in either *Getman* or *Wine Hobby.* Unlike those cases, the contact between Plaintiff and the children will be ongoing, since Plaintiff anticipates that if the address is disclosed he will have repeated contact with the children. Moreover, the anticipated contacts between Plaintiff and his children can hardly be considered arms length, as were the contacts involved in *Getman* and *Wine Hobby.*

While the disclosure of names and addresses in *Getman* may have been "minimally intrusive", Plaintiff's assertion that the children's address cannot be said to fairly relate to personnel or medical files, nor to implicate "similar private values", which the Exemption seeks to protect, is also unfounded in light of a recent Supreme Court decision. In *United States Department of State v. Washington Post,* —— U.S. ——, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982), the Supreme Court held that information concerning the citizenship status of Iranian nationals satisfied the "similar files" requirement of Exemption 6 and the agency's denial of a request to release this information should have been sustained upon a showing by the government that release of the information would constitute a clearly unwarranted invasion of personal privacy. The *Washington Post* court indicated that, although the language of Exemption 6 sheds little light on what Congress meant by "similar files", the legislative history indicates that Congress did not mean to limit Exemption 6: "to a narrow class of files containing only a discrete kind of personal information", but that "similar files" was to have a broad, rather than narrow, meaning. *United States Department of State v. Washington Post, supra.* In referring to the legislative history of the Exemption, the court cited both House and Senate Committee Reports which explained that the Exemption is "general" in nature and seeks to protect individuals:

> A *general exemption* for [this] category of information is much more practical than separate statutes protecting each type of personal record. The limitation of a 'clearly unwarranted invasion of personal privacy' provides a proper balance between the protection of an individual's right of privacy and the preservation of the public's right to Government information *by excluding those kinds of files the disclosure of which might harm the individual.* H.R.Rep. No. 1497, 89th Congress, 2d Session 11 (1966), U.S.Code Cong. & Admin.News 1966, pp. 2418, 2428 (Emphasis added.)

The Senate Judiciary Committee similarly reached a: "consensus that these personal files should not be open to the public, and

... decided upon a *general exemption* rather than a number of specific statutory authorizations for various agencies". Senate Report No. 813, 89th Congress, 1st Session 9 (1965) (Emphasis added.) According to the court: "the Committee concluded that the balancing of private against public interests, not the *nature* of the files in which the information was contained, should limit the scope of the exemption". *United States Department of State v. Washington Post, supra.* Thus, "the primary concern of Congress in drafting Exemption 6 was to provide for the confidentiality of personal matters". *Id,* citing *Department of Air Force v. Rose,* 425 U.S. 352, 375 n. 14, 96 S.Ct. 1592, 1606 n. 14, 48 L.Ed.2d 11 (1976).

In *Washington Post,* the petitioner's affidavit explained that the persons whose citizenship status was sought were prominent figures in Iran's revolutionary government and that compliance with the request would: "cause a real threat of physical harm" to both men. The Justices found that the Court of Appeals' refusal to consider the effect of disclosure upon the privacy interests of the individuals was in error and that this balancing process should be left to the lower court on remand. Indeed, the Sixth Circuit has also declined to give the phrase "similar files" a narrow, technical construction. *Madeira, supra.*

Thus, because the disclosure of the children's address in this case constitutes a higher level of intrusion than that present in *Getman,* and because it is not the *nature* of the files, but the balancing of private against public interests which limits the scope of Exemption 6, the Plaintiff's initial argument that his children's address does not come within the scope of the "similar files" element of Exemption 6 must fail, pending the balancing process.

It is the Defendant's contention that in view of the traditional balancing of the individual's right to privacy against the preservation of the basic purpose of FOIA: "to open agency action to the light of public scrutiny", *Rose, supra,* at 373, 96 S.Ct. at 1604, the children's address was in this case properly withheld. In support of this action, the Defendant notes that the children's mother, in vigorously refusing to give consent to the Plaintiff's request for disclosure, alleged that Plaintiff does not have visitation rights, and when he previously knew of the children's whereabouts, sheriff's authorities had to be called to make the Plaintiff stop annoying them. Accordingly, Defendant argues, the privacy right at issue here is substantial, whereas disclosure of the Plaintiff's children's address would not further the goal of opening an agency's action to public scrutiny.

The Plaintiff, on the other hand, claims that the balancing process should weigh in his favor since disclosure promotes the dual purpose of FOIA to promote better understanding of government functions and to promote general unrestricted access to government information for whatever purpose. In essence, Plaintiff contends that the release of this information would enable him to make the Social Security Administration more responsive to his children's needs, thus serving: "the theory of the informed electorate". Senate Report No. 813, *supra,* at 3. Plaintiff further contends that his more private interest of maintaining a meaningful relationship with his children deserves a favorable societal reaction. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

Since the first two prongs of the three part balancing test employed in Exemption 6 have already been met—(1) the information constitutes personnel, medical or similar files, see *Washington Post* discussion *supra;* and (2) disclosure of the information constitutes an invasion of privacy, see *Getman* and *Wine Hobby* discussion, *supra,* —the final prong must now be examined and a determination made as to whether such an invasion is justified by any countervailing public benefit from disclosure, *Madeira Nursing Center, supra;* or whether the severity of the invasion of personal privacy outweighs the public interest in disclosure. *Metropolitan Life, supra.*

Plaintiff's contention that disclosure of the children's address would allow him to make the Social Security Administration

accountable for the needs of his children is unwarranted, since the sole responsibility of the Social Security Administration is to make payments to entitled individuals. The Social Security Act makes clear that any payment made to an authorized representative payee is a complete settlement and satisfaction of any claim to the payment. 42 U.S.C. § 405(k). Thus, the Social Security Administration is not accountable for the needs of its beneficiaries, but only for payment of benefits owed. Accordingly, there is no cognizable public benefit that can be served under the Plaintiff's claim.

Furthermore, Plaintiff's contention that his more private interest in maintaining a meaningful relationship with his children deserves a decision in his favor, because of *Stanley v. Illinois,* is also unjustified. *Stanley* involved a situation where the state removed illegitimate children from their father's home without a hearing, upon the death of the children's mother. The Supreme Court held that the statutory scheme, which presumed an unwed father's unfitness, violated the due process clause of the Fourteenth Amendment. The issue of the father's interest in the instant case in maintaining a relationship with his children, while recognized, is quite different and simply does not rise to the level of importance necessary to outweigh the invasion of privacy in this particular case. Three factors contribute to this conclusion. First, one of the elements to be weighed in the balancing process is whether the information is available from another source. *Getman, supra; Robles v. EPA,* 484 F.2d 843 (CA 4 1973); *Wine Hobby, supra; Church of Scientology v. U.S. Department of Army,* 611 F.2d 738 (CA 9 1979). If the father were truly interested in establishing a meaningful relationship with his children, the more appropriate and direct route would seem to be to petition the state court to amend its Filiation and Support Order to provide visitation. That court appears to have access to the children's address and support payments are made to the Friend of the Court. Thus, Plaintiff clearly has other alternatives available in his quest for this information.

A second factor to consider involves the issue of federalism and federal-state comity. An FOIA suit is not the proper context, nor this Court the proper forum, to decide whether Plaintiff has visitation rights. Generally speaking, the federal courts have no jurisdiction when the substance of a suit is an intrafamily custody battle. *Denman v. Leedy,* 479 F.2d 1097 (CA 6 1973). See, *In Re Burrus,* 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 1500 (1890). In *Schleiffer v. Meyers,* 644 F.2d 656, 663 (CA 7 1981) where the child therein did not want to go to Sweden with the custodial parent, the court remarked: "Before considering ... the broader claims of deprivation of due process and equal protection, it is pertinent to observe that the whole subject of domestic relations, and particularly child custody problems, are generally considered state law matters outside federal jurisdiction". The Sixth Circuit concurred with this reasoning in a case which concerned Vietnamese children in foster care, and stated:

We conclude that the federal courts should not assert jurisdiction for reasons of federal state comity and because plaintiff's state remedies are adequate... Domestic relations is an area of predominently local interest... Thus, even if a legitimate constitutional claim was presented, the potential disruption of pending proceedings and the ensuing friction in our federal system provide good reasons for deferring state proceedings and declining federal jurisdiction.

\* \* \* \* \* \*

Our experience and sense of fairness teach us that this is not a case where the application of a federal rule whether of constitutional, international, or statutory origin is likely to provide the best answer. We must rely on a judge in a court of family law—with its more flexible standards and with the parties before him and their latest circumstances in mind— to balance the equities and seek compromises that best accommodate the interest of the parties. *Huynh Thi Anh v. Levi,* 586 F.2d 625, 632–634 (CA 6 1977).

FOIA should not be used to subvert the state's primary obligation to deal with domestic matters and custody disputes. This was certainly not the purpose of FOIA, and federal-state comity concerns caution against such a use.

██ Nor should Plaintiff be permitted to use FOIA as a discovery device. In *NLRB v. Hardeman Garment Corporation,* 557 F.2d 559 (CA 6 1977), the Sixth Circuit reversed a district court order compelling disclosure of certain affidavits obtained from employees during an investigation of unfair labor practice charges, and in doing so stated: "discovery for litigation purposes is not an expressly indicated purpose of the Act", citing *Renegotiation Board v. Bannercraft Company,* 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974). Likewise, the Second Circuit in *Brown v. FBI,* 658 F.2d 71 (CA 2 1981), remarked: "The FOIA is not intended to be an administrative discovery statute for the benefit of private parties", citing *Columbia Packing Company v. United States Department of Agriculture,* 417 F.Supp. 651 (D.C.Mass.1976). The FOIA is fundamentally designed to inform the public about agency action and not to benefit private litigants. *EPA v. Mink,* 410 U.S. 73, 79, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973); *Hardeman, supra.* A litigant's rights under the Act are: "neither increased nor decreased by reason of the fact that it claims an interest in the documents sought greater than that shared by the average member of the public." *NLRB v. Sears, Roebuck & Company,* 421 U.S. 132, 143 n. 10, 95 S.Ct. 1504, 1513 n. 10, 44 L.Ed.2d 29 (1975); *Hardeman, supra.* The Supreme Court, in a recent decision, *FBI v. Abramson,* —— U.S. ——, 102 S.Ct. 2054, 72 L.Ed.2d 376, released May 23, 1982, cited *Sears* and remarked that: "Congress did not differentiate between the purposes for which information was requested". *Sears, supra,* 421 U.S. at 149, 95 S.Ct. at 1515. "Rather, the Act required assessment of the harm produced by disclosure of certain types of information". *Abramson, supra.* In this weighing process, it is the interest of the general public and not that of the private litigant that must be considered. *Dit-*

*low v. Shultz,* 517 F.2d 166, 171–72 (C.A.D. C.1975). The Court cannot allow Plaintiff's personal interest to enter into the weighing or balancing process. *Brown v. FBI, supra.* Because of federal-state comity considerations; because Plaintiff has an alternate source for the information sought; and because Plaintiff's personal interest, without more, does not enter into the balancing process, Plaintiff's contention that this particular claim deserves favorable decision is without merit.

While the public benefit resulting from the disclosure of Plaintiff's children's address is not great, it remains to be determined whether it is outweighed by the severity of the invasion of personal privacy. In *Madeira, supra,* the Sixth Circuit found that: "since union organization of a company may take the form of a protracted and bitter struggle over employee loyalties, an employee may be amply justified in wishing to protect his pro-union declaration from employer scrutiny". Referring to the "chilling effect" such disclosure would have on the right of the employees to express their favorable union sentiments, the court cited *Pacific Molasses Company v. NLRB,* 577 F.2d 1172 (CA 5 1978): "We would be naive to disregard the abuse which could potentially occur if employers and other employees were harmed with this information". *Id.* at 1182. . . "The foregoing considerations compel a finding that employees have an important privacy interest in their personal attitudes toward union representation. Appellant has failed to convince us that this privacy interest is offset by any equally significant benefits to the public if this information were made available." *Madeira, supra.*

██ Similarly, in the instant case, the Court should not disregard the potential for abuse in view of the allegations by the children's mother that Plaintiff behaved in a harassing manner when he had prior access to the children. In addition, Plaintiff here, as in *Madeira,* has failed to demonstrate that this privacy interest is offset by any equally significant benefit to the public

if the children's address were made available. When all the factors are therefore considered: the severity of the invasion of personal privacy; the lack of public interest and disclosure; the federal-state comity concerns; and the availability of the information from an alternate source, it becomes clear that the invasion of the children's privacy under § 552(b)(6) is not justified by any countervailing public benefit from disclosure.

Plaintiff also seeks the children's address under subsection (q) of the Privacy Act which provides:

> *Effect of other laws.*—no agency shall rely on any exemption contained in section 552 [FOIA] of this title to withhold from an individual any record which is otherwise accessible to such individual under the provisions of this section. 5 U.S.C. § 552a(q).

Accordingly, even though it has been determined that release of this address under FOIA would be a clearly unwarranted invasion of the children's privacy, which is not outweighed by any countervailing public benefit, *Madeira supra,* it is still necessary to determine whether Plaintiff is entitled to obtain disclosure under the Privacy Act.

It is asserted by the Plaintiff that since his children's address is in the administrative folder in possession of the Social Security Administration, bearing his name and retrievable only by his social security number or name, it is "his" record; and is no less a part of that record than his education and medical history, which are specifically included in the definition of "record" under § 552a(a)(4). This argument is countered by the Defendant, who asserts that withholding the address is justified because under 5 U.S.C. § 552a(d)(1), the information requested must be in the individual's personal record; only that information which pertains to Plaintiff is considered to be his record under 5 U.S.C. § 552a(a)(4); and Plaintiff's children's address, while physically located in the same claims folder as information about the Plaintiff, it is not "about" Plaintiff and is, therefore, not considered part of Plaintiff's record, nor does it pertain to him.

The focus of the Court's inquiry must be on whether the children's address is an item of information which, even though it is physically contained in a claims folder identified and retrievable by Plaintiff's social security number, is *about* the Plaintiff so as to be *his* record under 5 U.S.C. § 552a(a)(4), which states:

> The term 'record' means any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

While there has been one case which holds that a federal agency does not have discretion to withhold information contained in a requesting individual's record, on the ground that the information does not pertain to him, *Voelker v. IRS,* 646 F.2d 332 (CA 8 1981), it is distinguishable on its facts from the case at bar, making the present case one of first impression.

When a government agency receives a request for information of a personal nature, possibly pertaining to a person other than the one making the request, the agency must reconcile two conflicting duties: the duty to make available to the public the information in its possession, and the duty to safeguard the privacy of individual members of the public. *Brown v. FBI,* 658 F.2d 71 (CA 2 1981). These opposing duties are enunciated in FOIA, and in the Privacy Act. The general purpose of FOIA is to strengthen the public's right to know; whereas the Privacy Act is intended to give the individual better control over the gathering, dissemination, and accuracy of agency information about himself. When enacting the Privacy Act Congress provided in pertinent part as follows:

(a) The Congress finds that—

(5) in order to protect the privacy of individuals identified in information sys-

tems maintained by Federal agencies, it is necessary and proper for the Congress to regulate the collection, maintenance, use, and dissemination of information by such agencies.

(b) The purpose of this Act is to provide certain safeguards for an individual against an invasion of personal privacy by requiring Federal agencies, except as otherwise provided by law, to—

(1) permit an individual to determine what records pertaining to him are collected, maintained, used, or disseminated by such agencies;

(2) permit an individual to prevent records pertaining to him obtained by such agencies for a particular purpose from being used or made available for another purpose without his consent;

(3) permit an individual to gain access to information pertaining to him in Federal agency records, to have a copy made of all or any portion thereof, and to correct or amend such records. Pub.L. 93–579, § 2(a)(5) and (b)(1), (2), (3).

◼ Thus, while the primary purpose of FOIA is to increase the citizen's access to government records, *Madeira, supra,* the main purpose of the Privacy Act is to forbid disclosure unless it is required by FOIA. *Lovell v. Alderete,* 630 F.2d 428 (CA 5 1980). The conflict between the underlying policies of the two acts become especially acute when, as in the instant case, there is a question as to whether the individual is seeking access to *his* record or to information pertaining to another. The provisions of the Privacy Act provide guidance:

Each agency that maintains a system of records shall—

(d)(1) upon request by an individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him, except that the agency may require the individual to furnish a written statement authorizing discussion of that

individual's record in the accompanying person's presence.

(b) *Conditions of disclosure*—No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be—(Eleven exceptions are enumerated, only one of which applies to the present case and will be dealt with, *infra.*)

\*　　\*　　\*　　\*　　\*　　\*

(a)(5) the term 'system of record' means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual.

◼ While Plaintiff's contention that the information, being in his folder and retrievable by his social security number, constitutes sufficient cause to make it part of his record has some merit, because of the unusual factual situation present in this case, the argument that the children's address is not "about" Plaintiff, does not pertain to him, and therefore is not accessible to him as his record, is more compelling.

The Defendant indicates that the Social Security Administration has a unique record keeping system. Since Social Security benefits may be paid to dependents of those primarily entitled to Social Security, every dependent and every primary beneficiary has information pertaining to him filed in one folder. This folder is identified by the primary beneficiary's social security number. Thus, in Plaintiff's case, both information pertaining to him and information pertaining to his children are filed in a claims folder whose identifier is Plaintiff's social security number. Defendant convincingly argues that Plaintiff's children's address, while physically located in the same claims folder as other information about the Plaintiff, it is not, however, part of the grouping

of information which is "about" Plaintiff and, therefore, may not be considered part of Plaintiff's record, since the term record under the Privacy Act is defined as "any item... of information *about* an individual". 5 U.S.C. § 552a(a)(4) (Emphasis added.)

To permit Plaintiff access to all information contained in the claims folder maintained by his account number could conceivably violate the congressional intent underscoring the access provision, permitting disclosure of information to those who should not receive it. Defendant cites as an example the situation where a divorced wife may receive benefits from her divorced husband's account. If the entire contents of the claims folder on a husband's account number is considered *his* record, the divorced husband would be entitled to information regarding his ex-wife, some of which may be highly personal. Defendant contends, again convincingly, that such a result is clearly not contemplated by the Privacy Act.

Thus, in order to gain access to information pursuant to § 552a(d)(1), Plaintiff's request must fall into one of two classifications: either the request must be for access to the individual's "record", or for information "pertaining to him which is contained in the system". 5 U.S.C. § 552a(d)(1). Here, Plaintiff cannot meet either of these criteria. The information, in order to fit the definition of "record", must be an item of information *about* the individual (which, as demonstrated *supra,* it is not) or it must *pertain to* him. Because the Plaintiff has not sought visitation rights, and because of the questionable relationship between Plaintiff and his children, as evidenced by the allegation of the mother that she had to call the sheriff to get Plaintiff to stop bothering her and her children when Plaintiff previously knew of the children's whereabouts, the children's address is neither "about" Plaintiff, nor does it "pertain to" him.

While there are no cases which are directly on point, I am guided by several cases which deal with other aspects of the Privacy Act and FOIA. *Voelker v. IRS,* 489 F.Supp. 40 (E.D.Mo.1980), reversed at 646 F.2d 332 (CA 8 1981), involved an IRS employee who sued the Internal Revenue Service contending that it violated the Privacy Act in failing to make available to him certain portions of a record compiled about him. The district court held that the Service properly edited material which pertained to a third party, where there was no showing of consent by such party. The Court of Appeals for the Eighth Circuit reversed, and, in doing so, held that the IRS did not have discretion to withhold information contained in plaintiff's record on the ground that the information did not pertain to him. In addition, there are cases which hold that certain information in an individual's record, which would reveal the identity of a source who furnished information under an express promise of confidentiality, may be withheld under § 552a(k)(2), (5) and (7). See for example, *Doe v. United States Civil Service Commission,* 483 F.Supp. 539 (S.D.N.Y.1980); *Nemetz v. Department of Treasury,* 446 F.Supp. 102 (N.D.Ill.1978); *Mervin v. Bonfanti,* 410 F.Supp. 1205 (D.D.C.1976). However, these cases did *not* deny access because the information did not *pertain to* them or was not in their record.

The factual situation in *Voelker* appears to be one in which the government might well have prevailed if it had invoked one of the exemptions available. Plaintiff, an attorney in the IRS, requested access to information relative to an investigation initiated by the IRS concerning him. The Internal Revenue Service eventually granted access to all portions of the report except for a single phrase in one section and portions of another. The defendant asserted that the deleted portions consisted of personal information pertaining to a third party and, as such, were not discoverable by the plaintiff, even though they were contained in a report maintained on plaintiff, without the consent of the third party in question. The district court, after an *in camera* review of the edited material, stated that the material clearly pertained to a third party and not to the plaintiff. The Eighth Circuit disagreed, observing that: "it defies logic to say that

information properly contained in a person's record does not pertain to that person, even if it may also pertain to another individual". *Voelker* at 334. The Court of Appeals continued: "(a)ccordingly, we hold that a federal agency does not have discretion to withhold information contained in a requesting individual's record on the ground that the information does not pertain to that individual". *Id.* at 334. It is significant here, however, that neither court addressed the issue of whether the information could have been withheld under one of the confidentiality exemptions.

Notably, a different conclusion was reached by the Fourth Circuit in *Local 2047, American Federation of Government Employees v. Defense General Supply Center,* 423 F.Supp. 481 (S.D.Va.1976), *aff'd* by 573 F.2d 184 (CA 4 1978). There, a labor organization representing certain government employees, had been entitled, under a collective bargaining agreement, to receive from the government certain information pertaining to employees. After passage of the Privacy Act, the government informed the union by letter that three categories of documents formerly furnished would no longer be made available. (Categories no longer supplied included such information as names of employees nominated for outstanding performance, suspected of abusing sick leave, and continually late for duty.) The union viewed the defendant's action as an unjustified breach of the collective bargaining agreement and in contrast, the defendant maintained that the Privacy Act precluded the disclosure of the requested information. The district court found that: "absent the written consent of the individual, *any* disclosure of information covered by the Privacy Act is prohibited, unless authorized by one or more of eleven specific exceptions". *Local 2047* at 483 (Emphasis in original.) 5 U.S.C. § 552a(b). The *Local 2047* Court further found that the disclosure did not fall within the routine use exception of the Act, and concluded that the requested information could not be disclosed, absent written consent, under the Privacy Act and its implementing regulations. This reasoning was affirmed on appeal by the Fourth Circuit.

In *Nemetz v. Department of Treasury,* 446 F.Supp. 102 (N.D.Ill.1978), an action was brought under FOIA and the Privacy Act, seeking access to background investigative information obtained by the Secret Service pursuant to plaintiff's application for employment, and seeking to amend any inaccurate or incomplete portions of the requested documents. The defendants withheld all or part of six pages of material pertaining to the plaintiff based on a claim of exemption under § 552a(k)(5) of the Privacy Act. (Investigatory material compiled for purposes of determining suitability for federal employment, only to the extent that disclosure would reveal the identity of a source promised confidentiality.) The *Nemetz* Court rejected the government's argument that all information received under a promise of confidentiality is exempt:

> To fulfill the Privacy Act's purpose of granting access to an individual's government records, and the FOIA's goal of full disclosure, any exemptions must be narrowly construed and the requirements strictly met. In cases where exemption is sought under § 552a(k)(5), this standard requires finding a promise of confidentiality as to each source sought to be withheld... Even if the defendants are able to support a claim of exemption for information which would identify the furnishing source, they still must produce information about the plaintiff which does not disclose the source. *Nemetz* at 105.

The *Nemetz* Court acknowledged the conflicting policies and in doing so stated:

> The Privacy Act 'recognizes that an individual normally has a right to inspect any records which the government maintains on him. On the other hand, Congress has specifically recognized that provision should be made for protecting the identity of a person who has taken the pains to write a frank evaluation of a perspective employee on the condition that his identity not be disclosed.' *Mervin v. Bonfanti,* 410 F.Supp. 1205, 1207 (D.D.C.1976). The § 552a(k)(5) exemption is very limited; it

operates only to protect the identity of a source promised confidentiality. The information obtained is exempt only to the extent it identifies the individual source. *Id.* at 106–107.

Further illumination is provided by *Florida Medical Association v. HEW*, 479 F.Supp. 1291 (M.D.Fla.1979), where a group of physicians brought an action to enjoin the Secretary of HEW from disclosing information concerning the annual amounts of reimbursements paid to Medicare providers in a way that would identify individually some of those providers. The district court held that the proposed disclosure was exempt from required disclosure under FOIA because it would constitute a clearly unwarranted invasion of personal privacy and, because it was exempt from FOIA disclosure under Exemption 6, disclosure was also prohibited by the Privacy Act.

In FOIA portion of the case, the *Florida Medical Association* Court considered the public interest's in knowing the amounts of public funds spent in reimbursing Medicare providers annually (which was especially strong in light of the on-going legislative debate over national health insurance), but found no justifying reason, in advancing this public interest, for exposing the personally identifying details to public view. The court reasoned that even though the term *"clearly* unwarranted invasion of personal privacy" in Exemption 6 may well suggest that the balance should initially be tilted in favor of disclosure, the tilt is outweighed by disclosures that unnecessarily contain personally identifying details. *Id.* at 1305 (Emphasis added). The court further found that if the release of information would "constitute a clearly unwarranted invasion of personal privacy" entitling that information to the benefit of Exemption 6, then that same standard would apply to the Privacy Act's bar against disclosure without "the prior written consent of the individual to whom the record pertains". 5 U.S.C. § 552a(b).

The Second Circuit reached a similar conclusion in *Brown v. FBI, supra,* where the plaintiff, convicted of kidnapping Mary Shepardson, sought access under FOIA to any information in the FBI's files concerning monetary or other benefits received by Ms. Shepardson in return for her testimony, her involvement in the government's witness protection program, information as to the custody of her children, her criminal record, and any information relating to her possible involvement with illegal drugs. The Second Circuit noted that: "the Privacy Act absolutely prohibits the non-consensual release of information personal to Ms. Shepardson except as required under FOIA. Therefore, the decision to disclose or withhold the requested information depends entirely on the interpretation and application of the claimed exemptions." *Brown, supra,* at 74. The *Brown* Court went on to hold that the requested information was exempt under § 552(b)(6) and non-disclosable under the Privacy Act and therefore, it was unnecessary to address the question whether (b)(7) provided an additional basis of exemption as "investigatory records".

■ In considering the relevance of these five cases to the matter at bar, the following points emerge:

1. Although the Court may not have had discretion in a fact situation such as *Voelker* to find that the information in plaintiff's record did not "pertain to" him, in the instant case, considering the particular method of record keeping utilized by the Social Security Administration, the ⸜fact that plaintiff's children did not live with him, he had not requested nor been granted visitation rights, an allegation of harassment had been made, and consent to disclosure had been requested and refused, it may be said here that the agency was justified in refusing to disclose the address on the grounds that it was not part of the plaintiff's record, nor did it "pertain to" him.

2. Although logic may seem to prevent specific material in an individual's record from being withheld on the grounds that it does not "pertain to" that individual, it may be withheld for other reasons, including lack of consent and the protection of confidential sources. *Local 2047* and *Nemetz, supra.* Therefore, in a case where it can be

demonstrated that, because of an unusual fact situation, the information requested is not about that individual, and consent has been denied, the language of the provision, congressional intent, and logic all support a refusal to release such information.

3. If material is exempt from disclosure because it is a clearly unwarranted invasion of privacy under FOIA's Exemption 6, its release is also prohibited under the Privacy Act's consent requirement. *Brown* and *Florida Medical Association, supra.*

While neither *Brown* nor *Florida Medical Association* are binding upon this Court, their reasoning is sound and is applicable to the instant case. Furthermore, since FOIA policy on releasing information is more liberal than the Privacy Act and still precludes release in the instant case, it would be anomalous indeed to permit release of the information under the Privacy Act where the purpose is to protect the individual's right to privacy.

Thus, the children's address may not be disclosed to Plaintiff for two reasons. First, it is not part of Plaintiff's record and does not "pertain to" him. Second, because it is exempt from required disclosure under FOIA Exemption 6 as a "clearly unwarranted invasion of personal privacy", its release is also prohibited under the Privacy Act without consent.

Plaintiff contends that consent is not required by § 552a(b) because the minor children, being family members of the Plaintiff, share no independent right of privacy under the Privacy Act greater than that recognized for the father. Moreover, Plaintiff asserts, even if consent is needed, Plaintiff, as legal parent, can exercise valid consent or, alternatively, seek release of the information on behalf of the children under

§ 552a(h). In any event, it is contended, the Office of Management and Budget has exceeded the scope of its power in setting such stringent restrictions on parental rights.

The Defendant argues that, pursuant to 5 U.S.C. § 552a(b), it is specifically barred from disclosing information pertaining to an individual without obtaining his consent, and since there has been no consent, either from Plaintiff's children or legal guardian, their mother, disclosure is not only not required pursuant to the Privacy Act, but is barred by the terms of that Act. Furthermore, Plaintiff's claim pursuant to § 552a(h) that he may have access to the information as a parent acting on behalf of his children, is not valid because Plaintiff is not acting on behalf of the children, and because OMB guidelines indicate that there is no absolute right of a parent to have access to a record about a child, absent a court order or consent.

 Plaintiff's claim that consent to disclosure is not necessary because the children have no independent right of privacy under the Privacy Act is not supported by the stated purposes of the Act, while Defendant's assertion that consent is needed has support in the clearly enunciated congressional intent, in administrative guidelines, and in the factual situation of this case. Plaintiff is correct when he contends that, when interpreting and applying the Privacy Act, the legislators' intent should be ascertained from available congressional records and the Act applied accordingly.[1] (Plaintiff's brief in support of Motion for Summary Judgment at pages 12 and 15, citing *Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975).) His interpretation of that intent is quite selective however, concentrating only

---

1. The House and Senate originally passed separate, materially different privacy bills. Facing strong pressure to enact some type of privacy legislation before the end of the session, and lacking adequate time for a conference committee, House and Senate Committee leaders held a series of informal meetings, ultimately producing a compromise bill. The original committee reports are thus, of somewhat limited value in interpreting the final statute, while the more reliable legislative history consists of a rather skimpy staff analysis of the compromise amendments appearing in the Congressional Record. Consequently, courts have encountered difficulty interpreting the Act. R. Bouchard and J. Franklin, *Guidebook to the Freedom of Information and Privacy Acts* 45 (1980). *See,* Comment, *The FOIA's Privacy Exemptions and the PA of 1974,* 11 *Harv C.R.–C.L.L.Rev.,* 596, 624–25 (1976).

on that portion of the legislative history which indicates that a citizen should have access to all information concerning him on file with the government and stressing the "all" while ignoring the "about him". (Plaintiff's brief at 15.) More importantly, Plaintiff ignores, as well, the fact that the congressional purposes behind granting an individual the right to have access to a record were to provide the individual an opportunity to monitor the record's accuracy, completeness and timeliness, as well as to determine whether the record had been abused by improper disclosure. See H.R. Rep. 93–1416, 93rd Congress, 2d Session 15 (1974); Senate Rep. 93–1183, 93rd Congress, 2d Session 20 (1974), U.S.Code Cong. & Admin.News 1974, p. 6916. As indicated by the Defendant, disclosure to the Plaintiff of the children's address does not achieve any of these enumerated purposes.

Additionally, the legislative history reveals that consent is crucial in implementing the purposes of the Act:

> The consent requirement may well be one of the most important, if not the most important, provision of the bill. No... transfer [of information] could be made unless it was pursuant to a written request by the individual or by his prior written consent. This requirement would apply to all so-called 'non-routine' transfers of information... A 'non-routine' transfer is generally one in which the personal information on an individual is used for a purpose other than originally intended. H.R.Rep. 93–1416, 93rd Congress, 2d Session 12 (1974).

In the instant case, release of the children's address clearly would be using the address for a purpose other than originally intended; i.e. sending the checks to the children.

It is also possible that if the agency complied with Plaintiff's request for disclosure of the children's address, it would be placing itself in a position where it would be vulnerable to a suit for damages on the part of the children.

Agencies are now faced with a dilemma. If they refuse to disclose material they risk being sued by the party who requests the file under the FOIA. Under the FOIA the court may award to a successful plaintiff his costs and attorneys' fees. If, on the other hand, agencies release material, they risk being sued under the Privacy Act by the person who is the subject of the file. In that case, the plaintiff might win by showing that the file was exempt from disclosure under the FOIA. A successful Privacy Act plaintiff can collect not only his costs and attorneys' fees but also actual damages sustained because of the disclosure. Thus agencies open themselves to possible liability for damages either by honoring, or refusing to honor, an FOIA request. Comment, *The FOIA's Privacy Exemptions and The Privacy Act of 1974*, 11 Harvard C.R.–C.L.L. Review 596, 627 (1976).

The above excerpted comment also suggests that, given this situation, agencies would probably choose not to disclose voluntarily under the FOIA in any close case, and further suggests that an agency might escape liability entirely if it can show that its motive for non-disclosure was to avoid a possible violation of the Privacy Act. *Id.* at 628.

While the scenerio contemplated in this comment did not involve an individual requesting access to a portion of a record, which he claimed was *his* record under the Privacy Act, the dilemma posed is nevertheless possible in the instant factual situation. Although it could be argued that the children's address does not constitute a "record which is contained in a system of records" under the provision requiring consent, § 552a(b), because the definition of "system of records" requires that the information be retrievable by the name or some other identifier assigned to the individual and the children's address is retrievable by their father's social security number, see *Grachow v. United States Custom Service*, 504 F.Supp. 632 (D.D.C.1980), the more meritorious argument is that; "in expounding a statute, we must not be guided by a single sentence or member of a sentence, but look

to the provision of the whole law, and to its object and policy". *Philbrook v. Glodgett, supra,* at 713, 95 S.Ct. at 1898; citing, *United States v. Heirs of Boisdore,* 52 U.S. 63, 8 How. 113, 13 L.Ed. 605 (1849); *Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); *Chemehuevi Tribe of Indians v. FPC,* 420 U.S. 395, 402–403, 95 S.Ct. 1066, 1071–72, 43 L.Ed.2d 279 (1975).

As discussed previously, the primary purpose of the Privacy Act is to protect privacy, to forbid disclosure unless it is required by FOIA. *Lovell v. Alderete, supra.* In addition, specific support for viewing the children's address as a "record", which requires their consent to disclosure, may be found in the legislative history:

> The definition of the term 'Record' as provided in the House bill has been expanded to assure the intent that a record can include *as little as one descriptive item* about an individual and that such records may incorporate but not be limited to information about an individual's education, financial transactions, medical history, criminal or employment records, and that they may contain his name, or the identifying number, symbol or other identifying particularly [sic] assigned to the individual, such as a finger or voice print or a photograph. The amended definition was adopted to more closely reflect the definition of "personal information" as used in the Senate bill. *Analysis of House and Senate Compromise Amendment to the Federal Privacy Act,* 120 Cong. Rec.—Senate 40408 (December 17, 1974; emphasis added).

Further support for finding unpersuasive this contention may be found in a recent law review article which finds: "myopic approaches to information problems... unacceptable whether they are taken by judges, administrators, those in the private sector or consumers of administrative decisions". *Cooper, Acquisition, Use and Dissemination of Information: A Consideration and Critique of the Public Law Perspective,* Administrative Law Review 81, 97 (Winter 1981). The author observed that the Privacy Protection Study Commission encountered difficulties caused by unclear or conflicting definitions in its study of the implementation of the Privacy Act, quoting the Commission report as follows:

> Whereas the record definition refers to information about an individual that contains his name or identifier; the system-of-records definition refers to information about an individual that is retrieved by name, identifier, or specifying particular. The crucial difference between the two definitions is obvious, and the effect has been to exclude many records from the Act's requirements about individuals that are not accessed by name, identifier, or assigned particular. The Interior Department, for example, files its records on job candidates recommended by Congressmen under the Congressman's names rather than the names of the applicants and the Maritime Administration (Department of Commerce) files information on directors of shipbuilding firms by shipyard and shipbuilding contract rather than by the director's names. *Id.* at 98 quoting *Privacy Protection Study Commission, The Privacy Act of 1974: An Assessment,* pp. 5–6 (1977).

The author further commented that the deficiency in the definition relates in part to the failure to understand the relationship between the information concepts on which the information statutes are based and the technology normally used to deal with the information. He again quoted the Privacy Commission Report:

> A further and extraordinary flaw in the system-of-records definition is that it springs from a manual rather than a computer-based model of information processing. In a manual record-keeping system, records are apt to be stored and retrieved by reference to a unique identifier. This, however, is not necessary in a modern computer-system that permits attribute searches. An attribute search, in contrast to the conventional "name search," or "index search," starts with a collection of data about many individuals and seeks to identify those particular individuals in the system who meet a set of prescribed conditions or who have a set of

prescribed attributes or combination of attributes. For example, officials of the Veterans Administration (VA) testified in the Commission's hearings on medical records that the VA has produced lists of names for another agency by using psychiatric diagnoses, age, and several other personal attributes as the search keys. *Id.* at 98, quoting Commission Report at pp. 6–7.

Accordingly, in a computer-based information system, the children's address might be retrievable in other ways in addition to their father's social security number and to say that consent is required only when information is retrieved when using the individual's identifier could conceivably emasculate one of the primary purposes of the Act—protecting the unauthorized dissemination and preventing abuse by improper disclosure. See Public Law 93–579, § 2(a)(5) and (b)(1), (2), (3) and H.R.Rep. 93–1416 at 15. This failure to adequately deal with the computerized retrieval problems was not intentional, however. In a comment on the definition of "record", the House report stated: "This encompasses records contained in either manual files or automated or computerized forms." H.R. Rep. 93–1416, 93rd Cong. 2d Sess. 12 (1974). If the clearly expressed legislative intent: "to permit an individual to prevent records pertaining to him . . . from being made available . . . without his consent," § 2(b)(2), is to prevail in the instant case, the agency must be precluded from releasing the children's address without their consent or be liable for the damages caused by such disclosure.

Furthermore, Plaintiff's contention that the children have no independent right of privacy under the Privacy Act is negated by the Office of Management and Budget

guidelines issued pursuant to the Privacy Act.[2] In explaining the application of 5 U.S.C. § 552a(h)[3], the guidelines state:

This is not intended to suggest that minors are precluded from exercising rights on their own behalf. . . a minor does have the right to access a record pertaining to him or herself. There is no absolute right of a parent to have access to a record about a child absent a court order or consent. 40 FR 56742 (December 4, 1975).

Accordingly, the Plaintiff may not gain disclosure of his children's address through § 552a(h).

■■■ Furthermore, Plaintiff's argument that even if consent is needed he can exercise consent as legal parent, or alternatively seek release of the information on behalf of the children under § 552a(h) is likewise without merit. As noted above, the Office of Management and Budget guidelines preclude this outcome. Additionally, as Defendant contends: "The anomaly presented by Plaintiff's request is emphasized by noting the intent of 5 U.S.C. § 552a(h)." (Defendant's Memorandum at p. 12). The intent of this provision was that the person who exercised a minor's (or legal incompetent's) access rights stands in the shoes of the minor (or legal incompetent). "An individual authorized to act on behalf of a minor or legal incompetent will be viewed as if he were the individual or subject individual." 45 CFR § 5b.10. Such is not the case here. As Defendant indicates, Plaintiff seeks his children's address for his own use, while his children seek no information from the Social Security Administration.

■■■ Plaintiff's claim, therefore, that the Office of Management and Budget guidelines "clearly exceeded the perimeter set

---

**2.** Section 6 of Pub.L. 93–579 provides:

The Office of Management and Budget shall—
(1) develop guidelines and regulations for the use of agencies in implementing the provisions of section 552a of title 5, United States Code, as added by section 3 of this Act; and
(2) provide continuing assistance to and oversight of the implementation of the provisions of such section by agencies.

**3.** Section 552a(h) provides:

*Rights of legal guardians.*—For the purpose of this section, the parent of any minor, or the legal guardian of any individual who has been declared to be incompetent due to physical or mental incapacity or age by a court of competent jurisdiction, may act on behalf of the individual.

down by the statute," (Plaintiff's brief at p. 17), and are "an invalid exercise of administrative rule making power" and contrary to the Administrative Procedure Act, specifically 5 U.S.C. § 706(2)(A) and (2)(B) [4] must also fail. Although Plaintiff's contention that the Office of Management and Budget's guideline is invalid was not stated in his Complaint,[5] but raised for the first time in his brief (as a rebuttal to reliance on the guideline in Defendant's Memorandum), the issue can be disposed of expeditiously. While a court is not bound by administrative interpretations, it may properly resort to such rulings for guidance, with the weight to be given dependent on the following factors:

1. The thoroughness evident in its consideration;

2. The validity of its reasoning;

3. Its consistency with earlier and later pronouncements;

4. And all those factors that give it the power to persuade, even if lacking power to control. *Skidmore v. Swift and Company,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

The Administrative Rules and interpretations are given important but not controlling significance. *Batterton v. Francis,* 432 U.S. 416, 424–425, 97 S.Ct. 2399, 2404–05, 53 L.Ed.2d 448 (1977). Varying degrees of deference are accorded to administrative interpretations based on such factors as the timing and consistency of the agency's position, and the nature of its expertise. *Batterton, supra,* at 425, 97 S.Ct. at 2405.

In *Local 2047, supra,* the union asserted that a regulation or administrative inter-

pretation adopted under the terms of the Privacy Act cannot abrogate a provision of a contract (collective bargaining agreement) if the regulation or administrative interpretation is unreasonable. The court concluded (without deciding whether this is necessarily the correct test to be applied) that: "(i)n light of the purposes of the Act and its provisions," the regulation and interpretation were not unreasonable. *Local 2047, supra,* at 186.

Plaintiff asserts, not only that the guidelines are unreasonable, but, that they are contrary to 5 U.S.C. § 706(2)(A); i.e., arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law. In light of the purpose of the Privacy Act to protect information about an individual from being unnecessarily disclosed without his consent, and the well established rule that the party attacking an administrative regulation carries the burden of establishing that it is inconsistent with the statute it implements, *Smith v. Prokop,* 496 F.Supp. 861 (D.C.Ohio 1980); *Air Transport Association of America v. Federal Energy Office,* 382 F.Supp. 437 (D.C.D.C.1974), *aff'd* 520 F.2d 1339, Plaintiff's contention that the Office of Management and Budget guidelines should be declared invalid must fail.

Finally, Plaintiff argues that the lack of parental visitation from the father, and possible neglect by the custodian mother, warrants the disclosure of the children's address because of: "compelling circumstances affecting the health or safety of an individual", under § 552a(b)(8). The Defend-

---

4. § 706 The reviewing Court shall—
 (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
 (B) contrary to constitutional right, power, privilege or immunity.

5. Plaintiff's Complaint asked that the administrative rule barring disclosure (SSA, DHEW, Claims Manual § 7320.1(a)(b)) be stricken because it was in violation of the FOIA. Basically, both rules say *never* disclose the address of

another beneficiary. Plaintiff, however, did not address this issue in his brief, evidently conceding the validity of Defendant's contention that the provision does not pertain to the FOIA but addresses "routine uses" under the Privacy Act. "An agency, pursuant to § 552a(b)(3), may disclose information absent written consent of the subject individual if it is pursuant to a routine use. The instructions, at issue, merely indicate that disclosure of an address may never be made pursuant to a routine use." (Defendant's Memorandum at p. 16).

ant, however, notes that this provision was meant to encompass disclosures only in emergency situations, involving matters of life and death, and that Plaintiff has not made a showing sufficient to indicate such a situation.

Plaintiff's argument concerning § 552a(b)(8) is based on a misunderstanding of the underlying purpose of this provision. Both the Senate and House reports indicate that this subsection was intended to apply only to such valid life and death situations as an airplane crash or epidemic, "where consent cannot be obtained because of time and distance and instant action is required". H.R.Rep. 93–1416 at p. 12. It was further contemplated that consent subsequent to the disclosure would be obtained and that the "discretion authorized here is intended to be used rarely". Senate Rep. 93–1183, 93rd Cong. 2d Sess. U.S.Code Congressional and Administrative News 6985 (1974). Plaintiff's statement, in his affidavit, that he was informed that the children were being neglected is not sufficient to show such "compelling circumstances affecting the health or safety" of the children. Accordingly, this claim too must fail.

In view of the foregoing, the Defendant's refusal to comply with the Plaintiff's request to disclose the address of the children was supported by adequate justification under both the FOIA and the Privacy Act so that no genuine issue of material fact remains to be decided. Therefore, the Defendant is entitled to summary judgment in his favor as a matter of law.