Betty **MARTIN**

v.

**OFFICE OF SPECIAL COUNSEL, MERIT SYSTEMS PROTECTION BOARD, Appellant.**

No. 86–5385.

United States Court of Appeals, District of Columbia Circuit.

Argued March 2, 1987.

Decided June 5, 1987.

Alfred Mollin, Attorney, Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty. and Leonard Schaitman, Atty., Dept. of Justice, were on the brief, for appellant.

Peter B. Broida for appellee.

Before MIKVA, STARR, and WILLIAMS, Circuit Judges.

Opinion for the court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

In this Freedom of Information Act (FOIA) and Privacy Act case, the Office of Special Counsel (OSC) of the Merit Systems Protection Board (MSPB) appeals a district court order requiring the release of witness affidavits and an OSC attorney's witness interview notes. These documents came into being as part of an OSC investigation into appellee's allegation that she had been the victim of "prohibited personnel practices" in the course of her work as a civilian employee of the Air Force. OSC argues that Exemptions (b)(5) and (b)(7) of FOIA, 5 U.S.C. § 552(b)(5), (7) (1982), and Exemption (d)(5) of the Privacy Act, 5 U.S.C. § 552a(d)(5) (1982), protect the documents from mandatory disclosure. We find that FOIA's Exemption (b)(5), which protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency," and Privacy Act Exemption (d)(5), which embodies a similar protection for documents prepared in anticipation of a "civil action or proceeding," clearly cover these attorney work-product materials, the factual character of these materials notwithstanding. Consequently, we reverse the district court's order.

## I. Background

The Office of Special Counsel of the Merit Systems Protection Board acts as a civil service "watchdog" office, designed to investigate and prosecute prohibited personnel practices in the federal government. *See* 5 U.S.C. § 1206(a)(1) (1982). If an OSC investigation reveals that an employee's allegations of such a prohibited practice are well founded, OSC may file a complaint with MSPB asking for disciplinary action against the individual responsible. MSPB may impose any of a number of different penalties, subject to judicial review by the United States Courts of Appeals. 5 U.S.C. § 1207(b), (c) (1982). In this case, the district court ordered MSPB to release documents in an OSC investigative file compiled in response to appellee Martin's allegations that she was the victim of prohibited personnel practices.

Ms. Martin worked for some twenty-two years as a civilian procurement clerk for the Air Force at McDonnell Douglas Aircraft Corporation's St. Louis, Missouri facility. Ms. Martin claims she was harassed verbally by her superiors after she wrote

letters to the Secretary of the Air Force, the General Accounting Office, and others that alleged improper use of McDonnell Douglas personnel in certain Air Force activities. She complained of the harassment to OSC in March 1979. On the basis of the complaint, OSC initiated an investigation into these alleged "prohibited personnel practices," 5 U.S.C. § 2302(b)(8) (1982), as required by law. *Id.* § 1206(a)(1).

Some months later, while the OSC investigation into the harassment allegations was pending, the Air Force discharged Ms. Martin because of an unexplained and unjustified absence from work. On its face, at least, the discharge bore no relationship to Ms. Martin's earlier allegations. Ms. Martin claimed she was too ill to work during her six-week absence, but she was unable or unwilling to offer *any* medical evidence to support her claim. Ms. Martin filed an appeal of her discharge with MSPB, which rejected it as untimely. Only after MSPB lost appeals in the Court of Claims and the Federal Circuit did it agree to hear Ms. Martin's discharge appeal.

By the time MSPB finally took up Ms. Martin's discharge appeal, OSC had completed its investigation into Ms. Martin's earlier harassment allegations. During the investigation, an OSC attorney had interviewed fifteen of Ms. Martin's co-workers regarding the matter. The attorney took notes on the co-workers' comments, and subsequently asked eleven of them to prepare affidavits on particular factual aspects of the case. The investigating attorney ultimately determined that no prohibited practices had taken place, and OSC declined to file an official complaint with MSPB on Ms. Martin's behalf.

In the proceedings before MSPB appealing her discharge, Ms. Martin turned to the OSC investigation of her harassment allegations for evidence to support her wrongful discharge claim. Using ordinary civil discovery procedure, she asked for all "factual matters" contained in the OSC investigative file. MSPB ordered OSC to release the vast majority of the documents in that file. A small number of documents, including the attorney notes and witness state-ments, were withheld as "classic examples of attorney work-product." MSPB Opinion and Order at 5, Joint Appendix (JA) 35.

Later, but while MSPB's review of her discharge was still pending, Ms. Martin filed a FOIA/Privacy Act request for all materials compiled by OSC in connection with her allegations. Presumably she aimed to obtain the documents denied her in her discovery motion. Twenty-seven documents remained undisclosed at this time: the final report on the investigation by the OSC attorney in charge, eleven memoranda circulated among OSC staff members regarding the case, eleven signed witness statements, and four documents constituting the investigating attorney's notes on witness interviews. MSPB denied the request, and the denial was upheld on administrative appeal. Ms. Martin filed suit in the district court to compel disclosure. *See* 5 U.S.C. § 552(a)(4)(B) (1982).

The district court recognized that the attorney's investigative report and the eleven staff memoranda on the case constituted attorney work product, exempt from disclosure under Privacy Act Exemption (d)(5) and FOIA Exemption (b)(5), but ordered the remaining fifteen documents disclosed. The court reasoned that these documents were "purely factual" and thus not protected by Exemptions (d)(5) and (b)(5). Memorandum Order, February 7, 1986, at 5, JA 83. The court reasoned that the eleven witness statements were not attorney work-product because they were "the product of the witness, not of the lawyer." *Id.* Similarly, the attorney's interview notes merely recorded "in shorthand version the comments of the witnesses," not the impressions of the attorney. *Id.*

The district court justified this determination in part by reading Exemptions (d)(5) and (b)(5) to incorporate civil discovery privileges only to a ceiling level set by the "deliberative process" discovery privilege available to government agencies. That discovery privilege generally does not protect "purely factual" material. *See EPA v. Mink*, 410 U.S. 73, 86, 93 S.Ct. 827, 835, 35 L.Ed.2d 119 (1973). Asked by OSC to reconsider this aspect of its decision, the dis-

trict court noted the "logical appeal" of the government's objections, but refused to change its decision. Memorandum and Order, April 9, 1986, at 3, JA 86. OSC now appeals that portion of the ruling that orders disclosure of witness affidavits and attorney interview notes.

## II. Discussion

Appellee argues that both the Privacy Act and FOIA mandate disclosure of the documents at issue here. The two acts explicitly state that access to records under each is available without regard to exemptions under the other. See 5 U.S.C. §§ 552a(q)(1), (q)(2) (1982); Fagot v. FDIC, 584 F.Supp. 1168, 1173 (D.P.R.1984) (holding that a petitioner "is entitled to the cumulative result of what both [FOIA and the Privacy Act] provide"). In order to withhold these documents from Ms. Martin's twin Privacy Act/FOIA request, then, OSC must demonstrate that the documents fall within some exemption under each Act. If a FOIA exemption covers the documents, but a Privacy Act exemption does not, the documents must be released under the Privacy Act; if a Privacy Act exemption but not a FOIA exemption applies, the documents must be released under FOIA. Because we find that both FOIA Exemption (b)(5) and Privacy Act Exemption (d)(5) properly protect these documents from disclosure, we hold that OSC need not release them under either Act.

## A. FOIA Exemption (b)(5)

FOIA Exemption (b)(5) protects from disclosure those "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5) (1982). Though the Supreme Court has noted that this language "clearly contemplates that the public is entitled to all such memoranda or letters that a private party could discover in litigation with the agency," Mink, 410 U.S. at 86, 93 S.Ct. at 835, the exact relationship between ordinary civil discovery and Exemption (b)(5), particularly the application of discovery privileges under the exemption, has

bedeviled the courts since the Act's inception. Id. The Supreme Court, seeing the need for a broadly sweeping rule on the matter, has insisted that the needs of a particular plaintiff are not relevant to the exemption's applicability, and has held repeatedly that only documents "normally" or "routinely" disclosable in civil discovery fall outside the protection of the exemption. See NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 & n. 16, 95 S.Ct. 1504, 1515 & n. 16, 44 L.Ed.2d 29 (1975); FTC v. Grolier Inc., 462 U.S. 19, 26, 103 S.Ct. 2209, 2213, 76 L.Ed.2d 387 (1983); United States v. Weber Aircraft Corp., 465 U.S. 792, 799, 104 S.Ct. 1488, 1492, 79 L.Ed.2d 814 (1984). To resolve the present case we must grapple directly with the confusion plaguing the courts' efforts to apply the law of civil discovery privilege in Exemption (b)(5) analysis.

Appellant argues that the attorney notes and witness statements Ms. Martin seeks are classic attorney work product, privileged under the Supreme Court's opinion in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). As these documents would not be released "normally" or "routinely" in civil discovery, OSC insists, they fall squarely within the Court's interpretation of the exemption. See Sears, Roebuck, 421 U.S. at 154–55, 95 S.Ct. at 1518 (recognizing that Exemption (b)(5) incorporates the work-product privilege).

The district court interpreted Exemption (b)(5) more narrowly. The court found that, whatever the scope of the attorney work-product privilege in civil discovery, under Exemption (b)(5) that privilege extends only as far as does the general "deliberative process" executive privilege enjoyed by agencies. The court reasoned that Congress enacted Exemption (b)(5) only to protect the "free and frank discussion" of policy shielded by the deliberative process privilege, rather than to incorporate civil discovery privileges wholesale. Consequently, because factual material is not privileged under the deliberative process privilege, "purely factual" work product, even if otherwise privileged, does not

come within Exemption (b)(5). In reaching this conclusion, the court relied primarily on the legislative history of FOIA and on two circuit court cases that adopt the same view. *See* Memorandum and Order, April 9, 1986, at 4, JA 87, *citing* S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965); *Robbins Tire & Rubber Co. v. NLRB*, 563 F.2d 724, 735 (5th Cir.1977), *rev'd on other grounds*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978); *Deering Milliken, Inc. v. Irving*, 548 F.2d 1131, 1138 (4th Cir.1977).

The words of a statute presumptively establish its meaning, and the intent of Congress behind it. *State of Montana v. Clark*, 749 F.2d 740, 747 (D.C.Cir.1984). Here, those words point clearly, unequivocally, to the incorporation of all civil discovery rules into FOIA Exemption (b)(5). Nothing on the face of the provision indicates it incorporates the deliberative process privilege in a vacuum. We find neither the legislative history of the Act nor the reasoning in *Robbins Tire* and *Deering Milliken* sufficiently powerful to require the conclusion that Congress meant Exemption (b)(5) to extend to the limits of the "deliberative process" executive privilege, but no farther.

█ Of course, the courts must take care to construe the FOIA exemptions as "narrowly as consistent with efficient Government operation." *Weber Aircraft*, 465 U.S. at 802, 104 S.Ct. at 1494; *Grolier*, 462 U.S. at 23, 103 S.Ct. at 2212; *Department of the Air Force v. Rose*, 425 U.S. 352, 360–61, 96 S.Ct. 1592, 1598–99, 48 L.Ed.2d 11 (1976); *Mink*, 410 U.S. at 79, 93 S.Ct. at 832. Nevertheless, if Congress had intended this exemption solely to encourage "frank discussion" within an agency, it could easily have drafted language to make that intention clear. Congress did not do so.

The only pieces of evidence offered by Ms. Martin to support a contrary interpretation, a few sentences in the Act's legislative history, in no way conflict with the plain meaning of the statute's language. The passages she claims demonstrate a "deliberative process" cap on the exemption merely speak to the need for "frank discussion" in policymaking, and to the concern that without Exemption (b)(5) government might be forced to "operate in a fishbowl." S.Rep. No. 813 at 9. The legislative history does not suggest that this concern for "frank discussion" was exclusive, or that Congress intended Exemption (b)(5) to be a mere surrogate for the deliberative process privilege. As the Supreme Court succinctly stated in *Weber Aircraft*, "[T]he legislative history of Exemption 5 does not contain the kind of compelling evidence that would be necessary to persuade us to look beyond the plain statutory language." *Id.*

Despite its simplicity, however, this analysis is not uncontroversial. The Supreme Court has not specifically adopted any position on the question, and, as noted above, two circuits have taken a contrary approach. *See Robbins Tire*, 563 F.2d at 734–35; *Deering Milliken*, 548 F.2d at 1137–38. Both courts found that Exemption (b)(5) does not shield "purely factual" work-product material from disclosure under FOIA, and based this conclusion in substantial part on the Supreme Court's decision in *EPA v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). We think they misread *Mink*, particularly in light of the Supreme Court's recent interpretations of that opinion.

*Mink*'s discussion of Exemption (b)(5) is entirely an exposition of the deliberative process privilege. The parties did not raise an exemption claim based on the work-product privilege. *Mink*, 410 U.S. at 90–91, 93 S.Ct. at 837. The Court's distinction between "facts" and "deliberations," emphasized by both the district court in this case and the *Robbins Tire* and *Deering Milliken* courts, clearly applies only to the executive privilege, not to *all* discovery privileges under Exemption (b)(5). To emphasize the limited character of its analysis, the *Mink* Court carefully noted that the exemption does not allow "the withholding of factual material *otherwise available on discovery* merely because it was placed in a memorandum with matters of law, policy or opinion." 410 U.S. at 91, 93 S.Ct. at 837 (emphasis added). Materials

that fall within the *Hickman v. Taylor* work-product privilege are *not* "otherwise available on discovery." *Mink* simply does not apply the fact/deliberative process distinction to *every* Exemption (b)(5) case.

The *Mink* opinion, in fact, specifically recognizes and discusses legislative history that makes our conclusion virtually inescapable. Pointing to an earlier version of Exemption (b)(5) that would have permitted "[a]ll *factual* material in Government records ... to be made available to the public," *Mink*, 410 U.S. at 91, 93 S.Ct. at 837, *quoting* S.Rep. No. 1219, 88th Cong., 2d Sess. 7 (1964) (emphasis in original), the Court noted that this extreme approach had been "severely criticized" because "it would permit compelled disclosure of an otherwise private document." 410 U.S. at 91, 93 S.Ct. at 837. This "severely criticized" (and ultimately rejected) approach is precisely that presently advanced by Ms. Martin. Though the Court in *Mink* took pains to remind the lower courts that the defeat of the earlier, more limited exemption did not mean that *all* factual material is exempt, *id.*, that defeat is strong evidence that Congress did not intend to impose an across-the-board fact/deliberative process distinction in Exemption (b)(5) cases.

The Supreme Court's *Weber Aircraft* opinion, decided after *Robbins Tire* and *Deering Milliken,* puts any lingering doubt on the question to rest. In that case, the Court explicitly rejected the notion that "purely factual material can never qualify for protection under Exemption 5." 465 U.S. at 800 n. 17, 104 S.Ct. at 1493 n. 17. *Mink*, the Court explained, "merely states that *otherwise nonprivileged* factual material cannot be withheld under Exemption 5 merely because it appears in the same document as privileged material, and that Congress intended to adopt relevant case law on privilege." *Id.* (emphasis added). In light of this straightforward enunciation of the limits of the fact/deliberative process distinction in Exemption (b)(5), we think it entirely possible that the Fourth and Fifth Circuits would decide *Robbins Tire* and *Deering Milliken* differently if confronted with those cases today.

One other critical consideration compels us to adopt this interpretation of Exemption (b)(5). By applying the fact/deliberative process distinction to a work-product privilege case, the district court's decision effectively allows FOIA to be used as a supplement to civil discovery. Not only does this use of FOIA undercut the exemption's apparent function (the exemption on its face seems designed to avoid precisely this possibility), it also runs afoul of the decisions of the Supreme Court, which have "consistently rejected such a reading of FOIA." *Weber Aircraft*, 465 U.S. at 801, 104 S.Ct. at 1493. Ms. Martin was unable to obtain these documents using ordinary civil discovery methods, and FOIA should not be read to alter that result.

Ms. Martin also asserts that this court, in *Mervin v. FTC*, 591 F.2d 821 (D.C.Cir. 1978), adopted the fact/deliberative process distinction for Exemption (b)(5) work-product privilege cases. We can find no such holding in *Mervin*. In that case the court *refused* to segregate allegedly "purely factual" material from work-product documents. 591 F.2d at 826. The court actually emphasized that the deliberative process privilege, not the work-product privilege, is the source of the fact/deliberative process distinction, and specifically noted that factual elements can "seldom" be segregated from attorney work product. *Id.* at 827. Any implicit statement that factual materials might be segregable from work product in some cases is at most a dictum, and an unarticulated dictum at that. *Mervin* is in no way precedent for appellee's proposition; even if we were inclined to follow the reasoning of its implicit dictum, we would be hard pressed to say just what the scope of that *sotto voce* statement might be.

Ms. Martin argues as well that Exemption (b)(5) does not apply to these documents because they are not "inter-agency or intra-agency memorandums." She alleges, without evidence, that some of the witnesses whose statements are at issue here were not government employees at the time the statements were made. As OSC specifically assures us that all the

witnesses were employees of the Air Force at the time of their statements, we reject Ms. Martin's argument.

■ Naturally, if the privilege asserted by OSC in this case had been the "deliberative process" executive privilege itself, the district court would have been correct to evaluate the "factual" character of these documents as one factor in its Exemption (b)(5) analysis. But it is the work-product privilege that drives this case, not the deliberative process privilege. The work-product privilege simply does not distinguish between factual and deliberative material. Neither does Exemption (b)(5), in itself, contain any such limitation on its incorporation of civil discovery privilege in general, or the work-product privilege specifically. In sum, we find that if the work-product privilege protects the documents at issue here, Exemption (b)(5) protects them as well, regardless of their status as "factual" or "deliberative."

■ Consequently, we must determine whether these documents fall within the work-product privilege. We find that they do. A clearer case for application of *Hickman v. Taylor* is difficult to imagine. In *Hickman* the Supreme Court held that witness statements prepared at the request of an attorney are privileged work product and not subject to discovery unless the discovering party can show the statements are "essential" to her case. 329 U.S. at 511, 67 S.Ct. at 393. The Court also held that attorney *notes* taken during witness interviews are, for all practical purposes, *always* privileged. *Id.* at 512–13, 67 S.Ct. at 394. *Hickman*, therefore, covers precisely the types of documents disputed in the case before us. MSPB denied Ms. Martin's civil discovery request because, as MSPB put it, the documents constitute "classic examples of work product." MSPB Initial Decision at 5, JA 35. We agree with that characterization: Without doubt, these documents would not "normally" and "routinely" be released in civil discovery. We hold, therefore, that they are shielded from disclosure under FOIA by Exemption (b)(5). *See Sears, Roebuck*, 421 U.S. at 149 & n. 16, 95 S.Ct. at 1515 & n.

16; *Grolier*, 462 U.S. at 24, 103 S.Ct. at 2212.

Because we resolve the FOIA dispute on the basis of Exemption (b)(5), we have no occasion to consider OSC's argument that Exemption (b)(7) of the Act also protects these documents from disclosure.

### B. *Privacy Act Exemption (d)(5)*

Privacy Act Exemption (d)(5) provides:
Nothing in this section shall allow an individual access to information compiled in reasonable anticipation of a civil action or proceeding.

5 U.S.C. § 552a(d)(5) (1982). At the outset, we note that this language does not admit of any distinction between "facts" and "deliberative processes." Unlike FOIA Exemption (b)(5), Exemption (d)(5) in no way incorporates civil discovery law, and therefore in no way incorporates the executive "deliberative process" privilege. Indeed, the exemption speaks of "information," a term that embraces facts as easily as it does deliberative processes. The character of the attorney notes and witness statements as "fact" or "deliberative process" is irrelevant to proper analysis under this provision. To the extent that the district court held to the contrary, it was in error.

Ms. Martin's principal argument, however, rests on a different ground. She insists that Exemption (d)(5) does not properly cover documents compiled, as here, in anticipation of *administrative*, rather than judicial, proceedings. Extending the exemption to such hearings, she asserts, would eviscerate the Privacy Act by insulating a vast array of agency documentation from the Act's disclosure requirements.

This objection, although not without an element of truth, founders on the actual language of the exemption. The phrase "civil action or proceeding" plainly encompasses nonjudicial hearings of some kind; to argue otherwise is to make the words "or proceeding" meaningless. Ms. Martin gives us no other reasonable explanation of Congress' intent in enacting this phrase. The core issue, then, is not *whether* documents prepared for administrative hear-

ings can ever come within Exemption (d)(5), but rather, *what sort* of administrative proceedings Congress had in mind for such protection.

Ms. Martin justifiably raises the alarm against exempting documents reasonably prepared in anticipation of *any* type of administrative proceeding. If Exemption (d)(5) shielded documents prepared for administrative hearings of any sort, the Privacy Act might indeed become a dead letter. Hearings are the bread and butter of many executive agencies, and documents prepared for those hearings comprise an enormous portion of the information Congress intended to make available to concerned individuals under the Privacy Act. *See* R. BOUCHARD & J. FRANKLIN, GUIDEBOOK TO THE FREEDOM OF INFORMATION AND PRIVACY ACTS 39–43 (1980).

■ But OSC does not argue, and this case does not require, that we interpret Exemption (d)(5) so expansively. We merely must decide whether Congress intended the exemption to shelter documents prepared in anticipation of *quasi-judicial* hearings of the sort conducted by MSPB. For several reasons, we find that Congress did so intend.

First, the language of the exemption is strong evidence of that intent. By using the phrase "civil action or proceeding," Congress unquestionably intended to protect documents prepared for actions in the district courts. Documents prepared for some types of administrative proceedings also come within this language, although the phrase does not make clear just which. Of all types of administrative hearings, quasi-judicial hearings are most like the formal civil actions Congress clearly and *specifically* intended to protect. MSPB's hearings are adversarial, include discovery proceedings, 5 C.F.R. § 1201.72(b) (1986), and are subject to the rules of evidence. 5 U.S.C. § 1205(b)(1) (1982). The functions of this sort of quasi-judicial tribunal track those of the civil courts. *See* S.Rep. 969, 95th Cong., 2d Sess. 24 (1978), U.S.Code Cong. & Admin.News 1978, p. 2723; 5 U.S.C. §§ 1205(a)(1), 1205(b)(1) (1982). Moreover, courts of appeals review deci-

sions of the MSPB directly, just as they review district court decisions. S.Rep. 969 at 52, U.S.Code Cong. & Admin.News 1978, p. 2723; 5 U.S.C. § 1207(c) (1982). It is difficult to see any functional reason to distinguish between documents prepared in anticipation of a district court action and those prepared in anticipation of proceedings before MSPB. Whatever Congress may have intended for other types of administrative proceedings, it must have intended quasi-judicial hearings to fall within the term "civil proceedings."

Second, appellee's concern notwithstanding, exempting documents prepared in anticipation of quasi-judicial proceedings will not gut the Privacy Act. Quasi-judicial hearings are relatively rare, and the vast majority of agency records will not be associated with them. Moreover, quasi-judicial hearings—adversarial proceedings, subject to the rules of evidence and with opportunity for discovery—are an easily discernible breed. We need not fear overmuch an ever-widening set of hearings embraced by the term and protected by Exemption (d)(5).

Finally, the Office of Management and Budget has consistently interpreted Exemption (d)(5) to include documents prepared for quasi-judicial proceedings. *See* Privacy Act Guidelines, 40 Fed.Reg. 28948, 28960 (July 9, 1975) ("The term civil proceeding was intended to cover ... quasi-judicial and preliminary judicial steps...."). Although the existence of this interpretation alone would not settle the issue before us, it is worthy of our attention and solicitude. In light of our overall reasoning on the scope of the exemption, OMB's interpretation makes our conclusion that much more certain.

■ For these reasons, we find that Privacy Act Exemption (d)(5) protects documents prepared in anticipation of quasi-judicial administrative hearings. The attorney notes and witness statements at issue here clearly came into being in anticipation of such a hearing, and are therefore shielded from disclosure by the exemption. Ms. Martin's demand for the documents under the Privacy Act fails.

III. CONCLUSION

The attorney notes and witness statements disputed in this case are quintessential examples of attorney work product, and therefore fall within the protection of FOIA Exemption (b)(5) regardless of their "factual" or "deliberative" character. Moreover, because those documents were prepared in anticipation of a quasi-judicial hearing by MSPB, they come within the scope of Privacy Act Exemption (d)(5). As the documents are therefore properly exempt from disclosure under both acts, they need not be released to appellee.

*Reversed.*