Georgy **TOPURIDZE**, Plaintiff,

v.

**UNITED STATES INFORMATION AGENCY**, Defendant,

and

**Author Doe, Defendant–Intervenor.**

Civ. A. No. 86–3121(CRR).

United States District Court, District of Columbia.

Aug. 20, 1991.

Carl V. Angelis, Katherine Garrett, Michael J. Kator and Joseph Scott of Kator, Scott & Heller, Washington, D.C., for plaintiff.

Jay B. Stephens, U.S. Atty., District of Columbia, John D. Bates, Robert E.L. Eaton, Jr. and R. Craig Lawrence, Asst. U.S. Attys., District of Columbia, for defendant.

Myron J. Mintz and Woody N. Peterson of Dickstein, Shapiro & Morin, Washington, D.C., for defendant-intervenor.

## OPINION

CHARLES R. RICHEY, District Judge.

In this Privacy Act suit, the privacy interests of the author of a letter are diametrically opposed to the right to access of the subject of that letter. Before the Court is the Motion for Reconsideration filed by the United States Information Agency ("USIA") pursuant to Fed.R.Civ.P. 60(b). After carefully considering the instant motion, the underlying law, the submissions of the parties, and the entire record herein, the Court shall deny USIA's Motion for Reconsideration and order the release of the document pursuant to the Privacy Act, 5 U.S.C. § 552a.

## I. BACKGROUND

This action arose out of a request that plaintiff made to the Federal Bureau of Investigation ("FBI") and the USIA for all documents and letters referring to him by name, which were sent to the FBI and the USIA from August, 1985 up until the date of his request. Both the FBI and the USIA located one four-page document which was responsive to plaintiff's request. The FBI and the USIA, however, both withheld the document from plaintiff pursuant to the Privacy Act and the Freedom of Informa-

tion Act, 5 U.S.C. § 552 ("FOIA"). By previous Memorandum Opinion and Order, this Court upheld the FBI's withholding of the document under both the Privacy Act and FOIA, but determined that the USIA should release the document to plaintiff. *Topuridze v. FBI, et al.*, No. 86–3120, slip op. at 4–5, 1989 WL 11709 (D.D.C. Feb. 6, 1989).[1]

The USIA then moved this Court pursuant to Rule 60(b) of the Federal Rules of Civil Procedure to reconsider its previous ruling and to conduct an *in camera* inspection of the document at issue. The USIA asserted that the Court's examination of the document *in camera* would lead the Court to change its opinion as to whether the document is about the author and subject to disclosure. In addition, the USIA stated that any offers that it previously made to this Court to review the document *in camera* were purposely vague because of "fear that any greater public specificity regarding the contents of the document and/or the need for *in camera* inspection would reveal the author's identity to the plaintiff."[2] The USIA claimed it was particularly cautious about disclosing the identity of the document's author because such disclosure could result in acts of physical retaliation against the author.[3]

Rule 60(b) enables a party to seek relief from a judgment. The purpose of the rule, however, is not "to rescue a litigant from strategic choices that later turn out to be improvident." *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C.Cir. 1980).

> This does not mean, however, that the district court is powerless to correct errors into which it is led by the parties' failure to make the key facts known. When a party time./ presents a previous-

---

1. At that time, the Court had not had the opportunity to examine the disputed document *in camera* and rejected USIA's argument that the document was a "dual record" about both the plaintiff and its author. The Court ruled that release of the document by USIA might require permission of the author only if the document were "about" the author, Slip. op. at 4, and concluded that the document could not qualify as being "about" the author merely because the document had been written by the author. *Id.*

Thus, the Court did not then reach the issue of whether the document was a Privacy Act "record" concerning the author, and therefore ordered the USIA to release the document to plaintiff. *Id.*

2. *Defendant's Motion to Reconsider* at 10.

3. *Id.*

ly undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust, reconsideration under rule 60(b)(6) is proper even though the original failure to present that information was inexcusable.

*Id.* (citing *Gray v. Estelle,* 574 F.2d 209, 214–15 (5th Cir.1978)).

The Court questioned the litigation strategy of the USIA. *Topuridze v. FBI, et al.,* No. 86–3120, slip. op. at 4 (D.D.C. Apr. 17, 1990). Nevertheless, the Court still concluded that " 'the incessant command of the court's conscience that justice be done in light of *all* the facts,' " *id.* (quoting *Bankers Mortgage Co. v. United States,* 423 F.2d 73, 77 (5th Cir.), *cert. denied,* 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970) (emphasis in original)), justified the Court's reconsideration of its previous ruling, especially given the alleged risk of harm to the author. *Topuridze,* slip. op. at 4. The Court has examined the document *in camera* and granted the requests of the author and the plaintiff to provide *in camera* submissions.

## II. ANALYSIS

Section 3(d)(1) of the Privacy Act, 5 U.S.C. § 552a(d)(1), provides in pertinent part:

> Each agency that maintains a system of records shall—
>
> (1) upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him ... to review the record and have a copy made of all or any portion thereof in a form comprehensible to him ...

However, section 3(b) of the Privacy Act provides:

> "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person ... except pursuant to a written request by, or with the prior consent of, the individual to whom the record pertains...." 5 U.S.C. § 552a(b).

At its core, this case concerns the inherent tension between sections 3(d) and 3(b), the right of the subject of the document to access, and the right of the author to privacy.

A "record" within the meaning of the Privacy Act is "any item, collection, or grouping of information *about* an individual that is maintained by an agency ... *and* that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual...." 5 U.S.C. § 552a(a)(4) (emphasis added). In order to be about an individual, a record must "reflect some quality or characteristic of the individual involved." *Boyd v. Secretary of the Navy,* 709 F.2d 684, 686 (11th Cir.), *cert. denied,* 464 U.S. 1043, 104 S.Ct. 709, 79 L.Ed.2d 173 (1983).

The parties have disputed whether the document is "about" the author. The government argues that because the letter is about the author, the plaintiff's right to access conflicts with the author's right to restrict dissemination of the document. Essentially relying on a single case, *De-Planche v. Califano,* 549 F.Supp. 685 (W.D.Mich.1982), USIA argues that the Court must permit the agency to withhold or destroy the letter because disclosure would infringe on the interests and personal safety of the author.[4] However, the government's argument cannot rest upon such a slender reed.

In *DePlanche,* plaintiff sought, pursuant to the Privacy Act and FOIA, the address of his two minor children from records maintained by the Social Security Administration. Critical to the court's holding that the children's address could not be disclosed under the Privacy Act was the finding that the address was not a part of the plaintiff's record and was not "about" him within the meaning of the Privacy Act. 549 F.Supp. at 699. It was insufficient that the record was retrievable through the plaintiff's social security number. *Id.* at 695, 698.[5]

---

**4.** USIA argues that the letter is in effect two Privacy Act records in one, with two contending

privacy interests which must be balanced against one another.

**5.** The Court concluded: "in a case where it can

Here, the document may well be "about" the author [6] within the meaning of the Privacy Act,[7] but the Court need not reach that issue. Because the document is without dispute about the plaintiff, it must be released to him in any event.

While there is a dearth of caselaw addressing this issue, the plaintiff argues, and the Court agrees, that the existent caselaw and the purposes of the Privacy Act mandate disclosure of the letter.· In *Voelker v. IRS*, 646 F.2d 332 (8th Cir.1981), the plaintiff sought information in his record held by the IRS. The IRS withheld portions of the plaintiff's record, which included information pertaining to a third party. The Court of Appeals reversed the District Court's determination that the document at issue pertained only to a third party, and not to the plaintiff. The Eighth Circuit held that the Internal Revenue Service did not have the discretion to withhold information contained in the requesting individual's record on the ground that the information did not pertain to that individual. The Court resolved the conflicting privacy interests of two persons in a single document by finding that the requester was entitled to the entire document, including the information pertaining to the other person. The Court reasoned:

> [The Privacy Act] clearly states that an individual is entitled to *his record*, as well as to other information that pertains to him. There is no justification for requiring that information in a requesting individual's record meet some separate "pertaining to" standard before disclosure is authorized. In any event, it defies logic to say that information properly contained in a person's record does not

pertain to that person, even if it may also pertain to another individual.

*Id.* at 334. Although the Privacy Act often limits scrutiny of personal information held by the government, "when the individual to whom the information pertains is also the individual requesting the information, the Privacy Act presumes that disclosure to that individual will occur." *Wren v. Harris*, 675 F.2d 1144, 1146 (10th Cir.1982) (citing 5 U.S.C. § 552a(d)(1)).

The release of the document is consistent with the underlying purposes of the Privacy Act. While the statute's legislative history is sketchy,[8]

> it is clear that the Act was intended to balance the federal government's need to gather information with the individual's right to privacy. H.R.Rep. No. 93–1416, 93d Cong., 2d Sess. 4 (1974). The Privacy Act effectuates this purpose by limiting the types of information that the government may collect, by restricting the means by which the government may gather and store information, and by establishing conditions for the release of the information held by the government.... [A]ccess to records is a central feature of the Act.

*Voelker*, 646 F.2d at 334.

Had Congress intended a "dual-record exemption" to the Privacy Act as the USIA urges, it presumably would have done so. As *Voelker* put it:

> If Congress had intended to shield from disclosure information in one person's record that pertains to another person, it could have and presumably would have added an exemption to sections 3(j) and 3(k). We cannot agree with the [govern-

be demonstrated that, because of an unusual fact situation, the information requested is not about that individual, and consent has been denied, the language of the provision, congressional intent, and logic all support a refusal to release such information." 549 F.Supp. at 698–99.

6. As USIA correctly notes, the letter discusses the author's family status, past and present employment and training, and refers to a fear of physical retaliation if the letter is released to the plaintiff. *Defendant's Motion to Reconsider* at 9, n. 11.

7. *See, e.g., Unt v. Aerospace Corp.*, 765 F.2d 1440, 1449 (9th Cir.1985) (finding letter was not about the author because it "reflect[ed] directly on the performance by [the subject] of its contract with the government, and only indirectly on any quality or characteristic possessed by [the author]").

8. To accelerate the passage of the Privacy Act, the House and Senate did not follow the usual procedure and no conference committee reports were prepared. *See Zeller v. United States*, 467 F.Supp. 487, 498 (E.D.N.Y.1979).

ment] that section 3(b) creates such an exemption.

*Id.* at 335. Moreover, the government has failed to invoke any of the explicit exemptions from access which Congress did provide in the Act under sections 3(j) and 3(k).[9]

Finally, were the Court to accept USIA's "dual record" argument, it could lead to results contrary to the purposes of the Privacy Act. Only the government would have access to a record pertaining to more than one individual. Although the Court has been deeply concerned throughout this litigation by the claim that releasing the document could endanger the author, this argument could be freely invoked by authors of even the most unfounded, defamatory and damaging records. Moreover, the government ignores the paramount right of Mr. Topuridze to have access to records about him. Without persuasive authority in the statute or the caselaw, the Court cannot accept the government's argument.[10]

### III. CONCLUSION

For all of the foregoing reasons, the Court by Order of even date herewith denies USIA's Motion for Reconsideration and orders the release of the withheld document upon the exhaustion of any and all appeals.

---

**9.** For example, USIA has not invoked the Privacy Act exemptions at sections 3(k)(2) and 3(k)(5), which require that an individual has "furnished information pursuant to a promise that his identity would be held in confidence." 5 U.S.C. §§ 552a(k)(2) and (5).

**10.** Because the document must be released under the Privacy Act, the Court need not consider whether the letter falls within an exemption to FOIA. *See, e.g., Martin v. Office of Special Counsel, MSPB,* 819 F.2d 1181, 1184 (D.C.Cir. 1987) (the Privacy Act and FOIA explicitly provide that access to records under each is available without regard to exemptions under the other).