Margaret J. QUINN, Plaintiff,

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES,**
Defendant.

No. 92–CV–452A.

United States District Court,
W.D. New York.

Oct. 1, 1993.

Randall Kay, Buffalo, NY, for plaintiff.

Dennis C. Vacco, U.S. Atty., (Shirley Troutman, Asst. U.S. Atty., of counsel), Buffalo, NY, for defendant.

## ORDER

ARCARA, District Judge.

On July 13, 1992 plaintiff commenced this action seeking the release of certain documents under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 and the Privacy Act, 5 U.S.C. § 552a. On July 27, 1992, the Court referred this matter to Magistrate Judge Carol E. Heckman pursuant to 28 U.S.C. § 636(b)(1)(B). On August 26, 1993,

Magistrate Judge Heckman filed a Report and Recommendation addressing the motions for summary judgment filed by both parties. Magistrate Judge Heckman recommended that plaintiff's motion for summary judgment be granted in part and that defendant's cross-motion for summary judgment be granted in part.

The Court having carefully reviewed the Report and Recommendation, as well as the pleadings and materials submitted by the parties; and no objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, plaintiff's motion for summary judgment is granted as it relates to the release of the December 4, 1991 memorandum (with enclosures), and is denied in all other respects.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is granted as to the January 31, 1992 memorandum (with enclosures).

IT IS FURTHER ORDERED that damages under 5 U.S.C. § 552a(g)(4) are not warranted since the Privacy Act provisions do not apply and that refusal to comply with an individual's request for access to records under § 552a(d)(1) does not allow for statutory damages in a suit under 5 U.S.C. § 552a(g)(1)(B).[1] The parties are directed to meet with Magistrate Heckman regarding plaintiff's request for attorneys' fees under 5 U.S.C. §§ 552(a)(4)(E) and 552a(g)(3)(B).

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This matter was referred to the undersigned to hear and report, in accordance with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that Plaintiff's motion for summary judgment be granted in part and denied in part, and that Defendant's

---

1. *See Thurston v. United States,* 810 F.2d 438, 447 (4th Cir.1987).

cross-motion for summary judgment be granted in part.

## BACKGROUND

The sequence of events giving rise to this lawsuit is derived from the somewhat disjointed record before the Court. The following facts are not disputed.[1]

Plaintiff is an Administrative Law Judge ("ALJ") at the Buffalo, New York Office of Hearings and Appeals ("OHA") for the Department of Health and Human Services, Social Security Administration ("SSA"). On September 5, 1991, a travel order in the amount of $900.00 was issued for Plaintiff to travel from Buffalo to Tampa, Florida to conduct hearings at the Tampa OHA between September 23 and 27, 1991 (Item 12, Exh. 3, p. 3). Plaintiff traveled to Tampa on Sunday, September 22, 1991 (id., p. 10), and conducted hearings on September 23–25, 1991. She returned from Orlando, Florida on Sunday, September 29, 1991 (id., pp. 8, 10).

By letter dated December 6, 1991, Acting Chief ALJ Jose Anglada of the Arlington, Virginia OHA main office, advised Plaintiff of apparent inconsistencies in the travel voucher she submitted on October 30, 1991. According to that letter, the discrepancies appeared as follows:

Although you were scheduled to hear cases from September 23 through September 27, the records show that you finished your last hearing and completed your official duties in Tampa on the afternoon of September 25. On your voucher, however, you claim reimbursement for subsistence and lodging subsequent to September 25.

The records also show that you traveled from Tampa to Kissimmee on September 25 and remained in the Kissimmee area until September 29, leaving from Orlando on that date, rather than from Tampa on September 27, as you claim on your voucher. Further, you did not obtain approval to take leave of any sort on September 26 and 27, and did not report to your tempo-

rary or permanent duty stations on those days.

(Item 12, Exh. 1). Chief ALJ Anglada requested an explanation of those matters within 10 days (id.).

In response, Plaintiff sent ALJ Anglada a memorandum dated December 9, 1991, in which Plaintiff explained that she held hearings in Tampa on September 23, 24 and 25, and adjudicated a case scheduled for the morning of the September 26 "on the record" (Item 18, Exh. 8). She further explained that she traveled to Kissimmee when a problem with her heel became acute, causing her to be confined to bed all day Thursday, September 26 (id.; see also February 18, 1992 Memorandum to Daniel J. Skoler, attached to Item 18).

By further memorandum to ALJ Anglada dated December 11, 1991, Plaintiff requested a copy of the "accusatory instrument" on which his inquiry was based (Item 12, Exh. 2). ALJ Anglada responded by letter dated December 18, 1991, in which he explained that he reviewed a number of documents prior to sending the December 6 letter (Item 12, Exh. 3). He enclosed copies of "the most pertinent" of those documents:

1. travel order (id., p. 3);
2. bill from Holiday Inn, Tampa (id., p. 4);
3. bill from Radisson Inn, Kissimmee (id., p. 5);
4. information on USAir tickets and itinerary (id., pp. 6–10);
5. travel voucher (attached to Item 18); and,
6. hearing schedule for Tampa for the week of September 23, 1991.

ALJ Anglada again requested an explanation within 10 days.

Plaintiff responded by memorandum dated January 6, 1992, as follows:

I note that my request for all information in regards to any questions regarding my Tampa travel was not complied with. I am again requesting that all information in your possession be mailed to me so that I

---

1. Neither party has complied with Rule 25 of the Local Rules for the Western District of New York, which requires submission with the notice of motion of a concise statement of material facts as to which the moving party contends there is no genuine issue to be tried.

may properly respond. Pertinent information does not include any correspondence from any source or any telephone memorandums or other letters, notes, etc. (Item 12, Exh. 4). On January 8, 1992, Plaintiff also sent a memorandum to Regional Chief ALJ Irwin Bernstein, requesting "any correspondence, memorandums and other documentation with respect to the current inquiry by Judge Anglada [sic]" (Item 12, Exh. 5). In that memorandum, Plaintiff expressed her concern about this "covert inquiry" which she alleged was being conducted by the Buffalo Hearing Office Manager ("HOM"), Marilyn Wachowski (*id.*). ALJ Bernstein responded by memorandum dated January 15, 1992, that the voucher itself was the only documentation that he had (Item 12, Exh. 6).

Plaintiff took sick leave between January 20 and February 10, 1992, for surgery on her heel spur. During that time, her secretary sent a memorandum on her behalf to HOM Wachowski dated January 28, 1992, requesting "copies of all correspondence from all and any sources, with respect to [the] Tampa trip in September 1991" (Item 12, Exh. 7). Ms. Wachowski responded by memorandum dated January 31, 1992, that she had been advised that this request "is a Freedom of Information request for which I do not have the authority in procuring for you" (Item 12, Exh. 8). Ms. Wachowski advised Plaintiff that she had forwarded the request "to the proper authorities" (*id.*).

By letter dated February 13, 1992, ALJ Anglada advised Plaintiff that since she had not responded to his requests for an explanation of the Tampa trip discrepancies, he had referred the matter to Special Counsel, who had decided that the facts warranted filing charges with the Merit Systems Protection Board ("MSPB") (Item 12, Exh. 9, p. 1). ALJ Anglada also set forth a detailed explanation of the discrepancies in Plaintiff's Tampa trip voucher (*id.*, p. 2), and attached copies of memoranda from ALJs Bernstein and Dores McDonnell, Chief ALJ for the Tampa Hearing Office (*id.*, pp. 4–11). Plaintiff responded to ALJ Anglada's request for an explanation of the discrepancies by letter dated February 18, 1992 (attached to Item 18; *see also* Letter to Plaintiff from ALJ Anglada dated March 3, 1992, Item 12, Exh. 10(b)).

By letter to ALJ Bernstein dated February 20, 1992, Plaintiff requested "a complete copy of all travel regulations applying to judicial travel . . .," as well as a memorandum from HOM Wachowski referred to in ALJ Anglada's February 13 letter (but not attached), and "any communication that you have in my personnel file in regards to the Tampa matter or anything else" (Item 12, Exh. 10). ALJ Bernstein apparently did not respond to this request. Plaintiff reiterated this request by memorandum dated March 13, 1992 (Item 12, Exh. 11).

On March 16, 1992, Plaintiff sent a memorandum to ALJ Anglada complaining about the disallowance of telephone charges and overnight accommodations for September 25, 1991 (Item 12, Exh. 12). Plaintiff also requested "all judges [sic] travel vouchers and itineraries for the months of March, 1991 to present so that I can see why I am being treated differently" (*id.*).

On April 23, 1992, Plaintiff sent a letter to the OHA Office of General Counsel in Falls Church, Virginia, regarding "Requests under FOIA" (Item 12, Exh. 14, p. 1). In that letter, Plaintiff outlined her previous requests for documents pertaining to her Tampa travel voucher, and "formally" requested the following:

1. copies of Ms. Wachowski's memorandum to ALJ Bernstein dated on or after October 30, 1991;

2. copies of the current SSA travel regulations;

3. all Buffalo ALJ travel vouchers and their itineraries from March, 1991 to March, 1992; and

4. a memorandum from Judge Bernstein to David Lewis dated February 24, 1992.

(*id.*, pp. 1–2). Copies of this letter were sent to ALJ Anglada and Associate Commissioner Daniel Skoler.

According to the Declaration of Delmar D. Dowling, Director of the Office of Public Inquiries and Freedom of Information Officer for the SSA, this letter was received by his office on May 11, 1992, and a search of

the records of OHA was promptly conducted (Item 15, ¶¶ 2–3). According to Mr. Dowling, he advised Plaintiff on June 12, 1992 that her request had been received and the records search was underway (*id.*, ¶ 4).

Meanwhile, by letter dated May 8, 1992, ALJ Anglada notified Plaintiff that he was allowing her September 25 overnight stay in Tampa, as well as *per diem* for an additional travel day, thus resolving all remaining issues and closing the agency's inquiry into the travel voucher discrepancies (Item 12, Exh. 13). ALJ Anglada also pointed out certain unexplained conduct to be avoided by Plaintiff in the future, and cautioned Plaintiff to conform her future travel vouchers to actual itineraries and expenses (*id.*).

On June 12, 1992, Plaintiff wrote to Ethel Burrows at the SSA Freedom of Information Office, reiterating her request made in her April 22 letter to OHA for "all documents in their possession with regard to my Tampa voucher inquiry (protected under the Privacy Act) which I have been continually requesting since on or about December 11, 1991 ..." (Item 12, Exh. 16).

On July 13, 1992, Plaintiff filed this action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Privacy Act, 5 U.S.C. § 552a, seeking injunctive relief in the form of an order requiring the SSA to produce all requested documents, and damages of "no less than $1,000...." (Item 1).

By letter dated July 22, 1992, Mr. Dowling's office released the following documents to Plaintiff:

1.  December 6, 1991 note from Donald Przybylinski, OHA Special Counsel, to Buffalo Hearing Office Chief ALJ John Mowrer;

2.  November 8, 1991 memorandum from ALJ Bernstein to Donald Przybylinski, with attachments; and,

3.  February 24, 1992 memorandum from ALJ Bernstein to Wing Mak, HHS Director of Division of Finance.

(Item 15, App. C). Mr. Dowling advised Plaintiff that, based on the exemption from disclosure for inter- or intra-agency correspondence or documents prepared by an attorney in anticipation of litigation, as set forth at 5 U.S.C. § 552(b)(5), he was withholding the following documents:

1.  January 31, 1992 memorandum from Donald Przybylinski to Associate Commissioner Skoler, with attachments, and

2.  December 4, 1991 memorandum from Przybylinski to ALJ Anglada, with attachments.

(*Id.*). Mr. Dowling also advised Plaintiff that the SSA/OHA travel regulations she requested consisted of 863 pages which should be available for inspection at the Buffalo OHA office, and which would cost her $76.30 to obtain from the Freedom of Information Office. Finally, the letter advised Plaintiff of her right to appeal this decision within thirty days (*id.*).

By letter dated July 27, 1992, Mr. Dowling informed Plaintiff that OHA had identified approximately 2,500 documents responsive to her request for all Buffalo ALJ travel documents and itineraries, and that these documents could be obtained upon payment of $726.00 in search and copying costs (Item 15. App. D). Mr. Dowling reiterated the notice of right to appeal within thirty days (*id.*).

Plaintiff appealed Mr. Dowling's decision by letter dated August 18, 1992. According to Plaintiff, she should have been provided with "all the results of any investigation which are not Counsel's opinion but rather are statements reduced to notes or part of any document ..." (Item 12, Exh. 20, p. 1). Plaintiff also protested the cost of obtaining the other Buffalo ALJs' travel documents (*id.*).

### *DISCUSSION*

Through pretrial conferences, the dispute between the parties has now been narrowed down to two documents withheld from Plaintiff: the January 31, 1992 memorandum from Donald Przybylinski to Associate Commissioner Skoler, with attachments, and the December 4, 1991 memorandum from Przybylinski to ALJ Anglada, with attachments. Both were submitted to the Court for *in-camera* inspection, and total seven pages in length.

Defendant contends that the two Przybylinski memoranda and attached draft letters

(Item 15) are subject to (1) the FOIA exemption for inter- and intra-agency documents, (2) the deliberative process privilege, (3) the attorney-client privilege, and (4) the attorney work product doctrine. Defendant also contends that the withheld documents are not disclosable as agency "records" under the Privacy Act.

Both parties now move for summary judgment.

Summary judgment is appropriate if the pleadings, discovery materials and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162, 166–67 (2d Cir.1991). In order to avoid summary judgment, however, the nonmoving party is under the obligation "to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Burke v. Bevona,* 931 F.2d 998, 1001 (2d Cir.1991). "Entry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware, Inc. v. Anntaylor, Inc., supra,* 933 F.2d at 167.

Here, the questions presented are legal ones which do not involve questions of fact. Plaintiff claims that both the Privacy Act and FOIA mandate disclosure of the remaining documents withheld by the SSA. These statutes explicitly state that access to records under each is available without regard to exemption under the other. *See* 5 U.S.C. §§ 552a(q)(1), (q)(2). In other words, in order to withhold the notes and draft letters prepared by Special Counsel Przybylinski, SSA must demonstrate that these documents fall within some exemption under *each* act. *Martin v. Office of Special Counsel, MSPB,* 819 F.2d 1181, 1184 (D.C.Cir.1987). "If a

FOIA exemption covers the documents, but a Privacy Act exemption does not, the documents must be released under the Privacy Act; if a Privacy Act exemption but not a FOIA exemption applies, the documents must be released under FOIA." *Id.*

## I. FOIA Exemption (b)(5).

■ FOIA is structured so that virtually every document generated by a federal agency is available to the public in one form or another, unless it falls within one of the Act's nine exemptions. *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 136, 95 S.Ct. 1504, 1509, 44 L.Ed.2d 29 (1975). The Act provides for the availability of injunctive relief from the district court to order the production of agency documents improperly withheld. 5 U.S.C. § 552(a)(4)(B); *Martin v. Office of Special Counsel, MSPB, supra,* 819 F.2d at 1183.

■ The exemption asserted by the SSA here is set forth at § 552(b)(5), which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency...." 5 U.S.C. § 552(b)(5). This exemption incorporates "all civil discovery rules," *Martin, supra,* 819 F.2d at 1185, including the protections afforded by the deliberative process privilege, the attorney-client privilege, and the attorney work product doctrine. *Id.; see also N.L.R.B. v. Sears, Roebuck & Co., supra,* 421 U.S. at 154–55, 95 S.Ct. at 1518; *Mead Data Central, Inc. v. United States Department of Air Force,* 566 F.2d 242, 252 (D.C.Cir.1977).

The December 4, 1991 memo and draft letter contain information substantially identical to that contained in Judge Anglada's December 6, 1991 letter to Plaintiff. Any privilege or immunity from disclosure has effectively been waived. These documents should therefore be disclosed.

As to the January 31, 1991 Przybylinski memo and draft, however, these documents are protected from disclosure under FOIA. They were generated by counsel before the agency decided to terminate the Tampa travel voucher inquiry, and reflect the "give-and-

take of the consultative process" concerning the agency's decision whether or not to take disciplinary action against Plaintiff. *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980). These documents are therefore protected from disclosure by the deliberative process privilege contained in 5 U.S.C. 552(b)(5).

█ The January 31, 1991 Przybylinski documents are also exempted from disclosure under § 552(b)(5) as attorney-client communications. It is clear from the Vaughn Index [2] and the Court's *in camera* review that Mr. Przybylinski prepared this draft in his capacity as Special Counsel for OHA giving professional advice on legal questions bearing on the agency's decision whether to proceed with disciplinary action before the MSPB.

Furthermore, it is clear that the Przybylinski draft is protected from disclosure under § 552(b)(5) as attorney work product. It was prepared in anticipation of a quasi-judicial administrative disciplinary proceeding, and "would not 'normally' or 'routinely' be released in civil discovery." *Martin v. Office of Special Counsel, supra,* 819 F.2d at 1187 (citing *N.L.R.B. v. Sears, supra,* 421 U.S. at 149 & n. 16, 95 S.Ct. at 1515 & n. 16).

## II. Privacy Act.

█ Plaintiff argues that the Privacy Act requires the production of the withheld documents. However, the records being withheld under FOIA, discussed above, are not records within the meaning of the Privacy Act. The Privacy Act applies only to a record which is maintained within a system of records. 5 U.S.C. 552a(b). A "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular as-

signed to the individual." 5 U.S.C. 552a(a)(5). Defendant has demonstrated that OHA does not maintain the withheld documents in a system of records within the meaning of the Privacy Act. Dowling Declaration ¶ 11.

Accordingly, the Privacy Act does not provide an independent basis for disclosing the withheld records.

### *CONCLUSION*

For the reasons set forth above, summary judgment should be granted to Plaintiff as to the December 4, 1991 memorandum (with enclosures), and denied in all other respects. Summary judgment should be granted to Defendant as to the January 31, 1992 memorandum (with enclosures). Damages under § 552a(g)(4) [3] are not warranted since the Privacy Act provisions do not apply, and in any event that section does not allow for statutory damages to be awarded in a suit under § 552a(g)(1)(B) for refusal to comply with an individual's request for access to records under § 552a(d)(1). *See Thurston v. United States,* 810 F.2d 438, 447 (4th Cir. 1987).

As to Plaintiff's request for attorney's fees and costs under 552(a)(4)(E) and 552a(g)(3)(B), the parties are directed to meet with the Magistrate Judge on Monday, September 27, 1993 at 11:00 a.m. to discuss further proceedings.

**DATED:  Buffalo, New York
August 25, 1993**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

---

**2.** *See Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

**3.** Section 552a(g)(4) provides:
In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or

willful, the United States shall be liable to the individual in an amount equal to the sum of—
(A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
(B) the costs of the action together with reasonable attorney fees as determined by the court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); Wesolek, et al. v. Canadair Ltd., et al., 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

So Ordered.

DATED:   Buffalo, New York.
        August 24, 1993